Davis vs. The Town of Farmington.

---

DAVIS VS. THE TOWN OF FARMINGTON.

SPECIAL VERDICT. *(1) Matter of right. (2) Must prevail against general verdict. What defects fatal. (3) Case stated: verdict equivocal or evasive.*
EVIDENCE: *(4) In action for injuries to plaintiff's wife from defective highway.*

1. Under our statute (Laws of 1874, ch. 21), a party to an action tried by a jury may have a special verdict as a matter of absolute right, in respect to material and controverted questions of fact.

2. If there be a general as well as a special verdict, and they are inconsistent, the latter must prevail (R. S., ch. 132, sec. 14; *Lemke v. Railway Co.*, 39 Wis., 449); and if the special verdict is not full, explicit, consistent, and free from evasion, a general verdict will not cure the defect. *Haas v. Railway Co.*, 41 Wis., 44.

3. In an action against a town for injuries received by plaintiff's wife while driving upon a highway, one of the questions specially submitted to the jury was: "Under all the evidence, was it an *exercise of ordinary care and caution* for the plaintiff's wife to attempt to drive across from the Burr Oak road to the Lewis Valley road, in the darkness?" and this question was vital to the case. The answer of the jury was: "Under all the circumstances of the case, she was *justified in doing as she did.*" *Held*, that the answer is equivocal or evasive, and there must be a new trial.

4. Plaintiff's wife having died pending the action, it was proper to prove her death in order to show the time to which a recovery for loss of her services must be limited; but the court is inclined to think that evidence that her death was caused by the injury here in question, was inadmissible.

APPEAL from the Circuit Court for *La Crosse* County.

The action was commenced by *Thomas Davis* and Mary N. Davis, his wife, to recover damages for injuries received by the wife upon a highway in the defendant town, caused, as is alleged, by defects in such highway. The damages resulting from such injuries, accruing to each of the plaintiffs, were claimed in the complaint, pursuant to ch. 96, Laws of 1873.

While the action was pending, and before trial, Mrs. Davis died, and the action was thereafter prosecuted by the husband for the recovery of damages accruing to him in his own right.

The answer is, in substance, a general denial.

The testimony tends to show the following state of facts: At about eight o'clock in the evening of November 9, 1874, Mrs. Davis, accompanied by a Miss Robinson, left the village of Mindora Corners in an open buggy drawn by two horses, to go to the house of Mr. Kilmer in the defendant town. Mrs. Kimball, a daughter of Mr. Kilmer, with Mrs. Kilmer and a Miss Vincent, left the Corners at the same time in another buggy drawn by two horses, following closely the

buggy of Mrs. Davis. Those persons constituted one party, leaving the same house at the Corners for the same destination. Mrs. Kimball desired to lead, but Mrs. Davis declined to permit her to do so, and took the advance. The reason she gave for wishing to drive ahead of Mrs. Kimball was, that her horses did not like to follow another team; and Mrs. Kimball testified that both teams liked to take the road and keep it. The evening was quite dark, but both ladies declined the offer of a lantern.

The residence of Mr. Kilmer was two or three miles east of Mindora Corners, and on a road known as the valley road. Intermediate between the two points, a road from the northeast, known as the Burr Oak road, intersected the valley road at an acute angle. At the point of intersection, and east of that point, the ground descended to the south and west. In the darkness, Mrs. Davis drove a short distance upon the Burr Oak road, and, when she discovered her mistake, reined her team to the right, and drove across the intervening space, down a descent of a few feet, to the valley road. While doing so, her team became unmanageable, and ran away. The team crossed to the south side of the valley road, and Miss Robinson was thrown from the buggy while so crossing. They ran with Mrs. Davis about forty rods east, on a track near the south fence of the road, when the buggy wheel struck a rock near the traveled track, and Mrs. Davis was thrown from the buggy and received the injuries complained of. There was a turnpike in the center of the valley road where the team crossed, but it was out of repair east of that point, and the travel all went on the track near the fence. There was a ditch on the north side of the turnpike, and another ditch or rut between the turnpike and the track on which the team ran, both of which were crossed by the team.

The following is the testimony of Mrs. Kilmer relative to the crossing by Mrs. Davis from one road to the other, and the attending circumstances: "There seemed to be three

roads there at the forks.   When my daughter said Mrs. Davis had better turn around, that she was off the road, I think we were on the rough road; we had borne off to the left at the commencement; the horses seemed to go to the left.   What you call the main road went straight; there is a fork where we would go side of the fence, and where we would go on the turnpike.   One road turned to the right, and a road that went up Burr Oak turned to the left a little.   We were not traveling that road, because it was out of repair.   I don't know positively that we did not go onto the Burr Oak road, but I think we were on the old road we used to travel.   My daughter either said to Mrs. Davis, ' You are on the wrong track,' or ' the wrong road.'   I don't know whether the team in front stopped before she said that, or not; I think my daughter told her she had better turn around and go back; my daughter turned around and went back, but the team in front did not; they undertook to drive across to the other road, and I heard somebody scream, and then my daughter said the horses were running."

The court submitted twenty-one questions to the jury to be answered specifically.   Those numbered one to sixteen, inclusive, were proposed by counsel for defendant.   The questions, and the finding of the jury thereon, are as follows:

" 1.  Was the plaintiff's wife injured by being thrown from her wagon on the highway of the defendant alleged in the complaint, on the 9th day of November, 1874, and was she rendered wholly helpless, and unable to take care of herself, until July 17, 1875, by the injuries so received?   Ans. Yes.

" 2.  Under all the evidence, did the plaintiff's wife exercise ordinary care and prudence in attempting to drive over the road of the defendant complained of, without a light? Ans. Yes.

" 3.  Was the ditch on the north side of the Lewis Valley road, terminating at the junction of that road with the Burr Oak road, properly and safely constructed, and a necessary

one to protect the road from the wash of the water? Ans. Yes.

"4. Did the plaintiff's wife, in the darkness, drive her team or allow it to go off the Lewis Valley road and onto the Burr Oak road? Ans. Yes.

"5. Did the team of the plaintiff's wife become frightened and unmanageable, and run away? Ans. Yes.

"6. If the team became frightened and unmanageable, and ran away, was such fright and unmanageableness temporary, or did it continue until the team ran upon the rock where the accident occurred? Ans. It was not temporary, but continued until they ran upon the rock where the accident occurred.

"7. At what point did the team become frightened and unmanageable, if at all? Ans. Between the rut and the rock.

"8. If the team became frightened and unmanageable, what made them so? Ans. By the wagon going into the ditch, and throwing Miss Robinson out.

"9. If the team became frightened and unmanageable by reason of being driven into a ditch, what ditch was it — the one between the Burr Oak road and the Lewis Valley road, or between the turnpike and the fence road on the south side of the Lewis Valley road? Ans. Between the turnpike and the fence on the south side of the pike.

"10. Under all the evidence, was it an exercise of ordinary care and caution, for the plaintiff's wife to attempt to drive across from the Burr Oak road onto the Lewis Valley road, in the darkness? Ans. Under all of the circumstances, she was justified in doing as she did.

"11. Was not the injury received occasioned by the running away of the team, from the fright received by driving into the north ditch between the Burr Oak road and the Lewis Valley road? Ans. No.

"12. Was the highway of the defendant, at the time of the accident, in good and sufficient repair, and of sufficient width,

and in proper condition, to accommodate with safety all the travel which then had occasion to use it, the traveler using ordinary care and caution in using it? Ans. It was not.

"13. Would the accident have occurred, and the injury been received, but for the fright of the team, occasioned by being imprudently driven into the ditch between the Burr Oak and Lewis Valley road, in attempting to cross from one road to the other? Ans. Under the circumstances, they might have occurred.

"14. How much expense was incurred by the plaintiff in taking care of, and in trying to cure his wife of the injuries received? Ans. $1,397.62.

"15. How much was the value of the services of the wife to the plaintiff, [lost] by reason of the injury, from November 9, 1874, to July 17, 1875? Ans. $602.38.

"16. What cause, or causes combined, produced the accident which caused the injuries complained of? Ans. By roughness and obstructions in the road.

"17. *By the Court.* Was the road, at the place in question, defective or insufficient for the purposes of travel by the public, either from being badly or insufficiently constructed, or from being out of repair, so as to render travel by the public hazardous or unsafe? Ans. Yes.

"18. *By the Court.* If the jury find the highway at the place in question insufficient or out of proper repair, did such insufficiency or want of repair cause the injury to the plaintiff's wife? Ans. Yes.

"19. *By the Court.* Did the want of ordinary care and prudence on the part of Mrs. Davis, either in refusing to take a light, or in undertaking to drive her team in the darkness across from one road or track to another, produce, or materially contribute to produce, the injury complained of? Ans. No, they did not.

"20. *By the Court.* Do you find for the plaintiff or for the defendant? Ans. We find for the plaintiff.

Davis vs. The Town of Farmington.

" 21. *By the Court.* If you find for the plaintiff, what damages do you find he has sustained by reason of the injury? Ans. $2,000, as follows: First, $1,397.62, expenses; second, $602.38, loss of services of wife, as in sections 14 and 15 above."

A motion for a new trial was denied, and judgment was entered for the plaintiff pursuant to the verdict; from which the defendant appealed.

For the appellant, a brief was filed by *M. P. Wing* and *G. C. Prentiss,* and the cause was argued orally by *Mr. Wing.* They contended that the answer to the 10th question was evasive (*Bach v. Parmely,* 35 Wis., 238; *Haas v. Railway Co.,* 41 id., 44); that the answers to the 8th and 19th questions were inconsistent; and that the judgment should have been for the defendant, notwithstanding the general verdict. *Ewen v. Railway Co.,* 38 Wis., 613; *Delaney v. Railway Co.,* 33 id., 67, 72; *Nicks v. Marshall,* 24 id., 139; *Haas v. Railway Co., supra; Bellefontaine Railway Co. v. Hunter,* 33 Ind., 363; *McGrath v. Railroad Co.,* 59 N. Y., 470, 471.

For the respondent, a brief was filed by *Cameron, Losey & Bunn,* and the cause was argued orally by *Charles W. Bunn.*

LYON, J.   At the common law, the court may, in its discretion, require the jury to return a special verdict; and it is also competent for the jury to do so without such requirement. Under our statute, a party to an action tried by a jury may have a special verdict as matter of right.   Laws of 1874, ch. 21.   Such right is necessarily limited to material and controverted questions of fact; but within that limit it is absolute. When a special verdict is returned, there may be a general verdict also; but if the two are inconsistent, the former must prevail.   R. S., ch. 132, sec. 14; *Lemke v. R'y Co.,* 39 Wis., 449.

The right to a special verdict is a most valuable one.   By requiring the jury to pass separately and specifically upon

each controverted question of fact material to the issue, a more careful and methodical consideration of the testimony by the jury may be secured, and the precise grounds upon which the judgment is based will be disclosed. These are important results, but they cannot be obtained unless the findings are full, explicit, consistent with each other, and free from evasion. In *Haas v. Railway Co.*, the judgment was reversed because the special findings upon which it rested were in conflict. 41 Wis., 44. Nor can the want of these essential requisites be cured by a general verdict; for the party is entitled to a specific finding upon the very issue or proposition submitted, and cannot be turned away with the argument or inference that, because there is a general verdict, the jury must have found that a certain fact was proved. We are to determine, in the light of these principles, whether the judgment in the present case can be upheld. Assuming that the highway where the accident happened was insufficient, the controlling question in the case is, whether Mrs. Davis was guilty of any negligence which contributed proximately to the injuries complained of. That was a principal question litigated on the trial. If it was an act of negligence on her part to drive her team from the Burr Oak road to the valley road, in the darkness, it is almost impossible, under the circumstances of the case, to resist the conviction that such negligence contributed proximately to the disaster which immediately followed. The jury did not find that the driving of the team from the Burr Oak road down the declivity and into the ditch on the north side of the valley road, did not frighten or excite the horses, but only that they did not become " frightened *and* unmanageable " until they were driven into the ditch or rut on the south side of the turnpike. Neither did they find *specifically*, unless in answer to the tenth question, that it was not negligence to drive from the Burr Oak road into that ditch. The nineteenth question is not specific on that point. There is nothing in the special findings inconsistent with the

theory that the first proximate cause of the disaster to Mrs. Davis was her act in driving off the Burr Oak road where and in the manner she did. True, the jury found that the injuries to Mrs. Davis were not caused by the running away of the team from the fright received by their being driven into the north ditch; but they did not find that driving them there, in connection with some other proximate cause, did not cause such injuries.

Hence, the tenth question submitted to the jury, whether it was an exercise of ordinary care and caution by Mrs. Davis for her so to drive her team from one road to the other, is a most vital question in the case, and the defendant is entitled to a direct and unequivocal answer thereto. We think it has not been thus answered. The answer returned by the jury is, that "under all of the circumstances, she was justified in doing as she did." What the jury meant by saying that she was *justified* in doing as she did, we cannot say. They may have thought that the circumstances would justify some negligence on her part. Whether such was or was not their view, is a matter of mere conjecture. The question admitted of a categorical answer, and the defendant was clearly entitled to such an answer. Because it was not so answered, there must be another trial.

We are also inclined to think that testimony should not have been received to prove that the death of Mrs. Davis was the result of the injuries complained of. It was proper, of course, to prove her death, for that event limited the time to which the plaintiff was entitled to recover for the loss of her services; but the *cause* of her death was entirely immaterial to the case. The jury gave very liberal damages for loss of service, and in assessing such damages they may have been influenced by the fact that the death resulted from the injuries. However, we do not rest our judgment on this ground.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.