THE PARKINSON SUGAR COMPANY V. JESSE WILLIAM
RILEY, *by his father and next friend, William Riley.*

<div style="float:right">50   401<br>f79  580</div>

1. DANGEROUS PREMISES — *Injury to Employé — Finding — Evidence.*
Where the employé of a company engaged in the manufacture of
sugar and syrup is at work upon the premises of the company, and
within 40 or 50 feet of the factory of the company, upon a cold
morning in October, at the early hour of 4 A. M., becomes cold, and
obtains permission of the foreman of the work to go into the fac-
tory building of the company for the purpose of warming himself,
and, while attempting to enter the factory, he falls into an uncov-
ered cistern containing boiling water, about four feet from the
door of the factory, *held,* it cannot be decided, as a matter of law,
that when he left his place of work for the purpose of entering the
building he was pursuing his own comfort and pleasure, and had, at
most, only a bare license or permission of his foreman to go to that
portion of the premises near the cistern. And, further *held,* that
the finding of the jury, that "at the time of his injury, he was en-
gaged in the line of his duty," is sustained by the evidence.

2. VERDICT, *Inconsistent with Charge and Findings.* Where a minor,
through his father as his next friend, brings an action to recover
damages for personal injuries, and the court upon the trial, in-
structs the jury that there cannot be any recovery for loss of time,
board, care, nursing or medical expenses, and the jury find specially
that they allow nothing for physical pain, mental suffering, perma-
nent injury, or exemplary damages, a verdict for $1,000 as damages
for injuries received is inconsistent with the charge of the court
and the special findings.

*Error from Bourbon District Court.*

ACTION to recover for personal injuries. Judgment for
plaintiff, at the October term, 1889. The defendant *Com-
pany* comes to this court. The opinion states the facts.

*Bawden & Simons,* for plaintiff in error:

The court erred in giving the jury the special instructions
asked by the defendant in error. *A. T. & S. F. Rld. Co. v.
Ledbetter,* 34 Kas. 332; *Hickey v. Taaffe,* 12 N. E. Rep. 290;
*Warren v. S. K. Rly. Co.,* 37 Kas. 412; *Sanborn v. A. T.
& S. F. Rld. Co.,* 35 id. 298; *U. P. Rly. Co. v. Estes,* 37 id.

729; *Rush v. Mo. Pac. Rly. Co.*, 36 id. 136, 137; *Weld v. Mo. Pac. Rly. Co.*, 39 id. 68, 69; *Reading v. Pa. Rld. Co.*, 19 Atl. Rep. 321.

The court erred in refusing to give instruction No. 2 requested by plaintiff in error, and in modifying the same and giving it as modified, instead of giving it as requested. *Mo. Pac. Rly. Co. v. Haley*, 25 Kas. 56; *St. L. & S. F. Rly. Co. v. Weaver*, 35 id. 424. This error was not cured by any instruction given.

The court erred in its refusal to give the 7th, 9th, 12th, 13th, 14th, 15th, 18th and 19th instructions requested by plaintiff in error. *Pa. Rld. Co. v. Rathgeb*, 32 Ohio St. 66; *A. T. & S. F. Rld. Co. v. Hawkins*, 42 Kas. 359; *Corlett v. City of Leavenworth*, 27 id. 675; *Long v. Sanger*, 44 N. W. Rep. 1095; *St. L. & S. F. Rly. Co. v. Weaver*, 35 Kas. 432, 433; *T. H. & I. Rly. Co. v. Clem*, 23 N. E. Rep. 965; *K. P. Rly. Co. v. Mihlman*, 17 Kas. 224; *U. P. Rly. Co. v. Estes*, 37 id. 717–729; *Rush v. Mo. Pac. Rly. Co.*, 36 id. 136, 137; *Weld v. Mo. Pac. Rly. Co.*, 39 id. 68, 69.

The court erred in overruling the motion of plaintiff in error for judgment in its favor on the special findings of the jury, and also erred in overruling the motion of the plaintiff in error for a new trial. *A. T. & S. F. Rld. Co. v. Maher*, 23 Kas. 163; *Shoemaker v. St. L. & S. F. Rly. Co.*, 30 id. 359; *St. L. & S. F. Rly. Co. v. Shoemaker*, 38 id. 723; *Harvester Works Co. v. Cummings*, 26 id. 367; *E. M. N. & S. E. Rly. Co. v. Maxwell*, 39 id. 652; *Aultman v. Mickey*, 41 id. 348; *C. I. & K. Rld. Co. v. Townsdin*, 38 id. 78: *A. T. & S. F. Rld. Co. v. Woodcock*, 42 id. 344; *A. T. & S. F. Rld. Co. v. Harvey*, 31 id. 750, 751; *A. T. & S. F. Rld. Co. v. Lindley*, 42 id. 714–727.

We submit that the fact that some of the special findings are without any support in the evidence, and others against the evidence, casts suspicion on all the other findings in favor of the defendant in error and on the general verdict. *U. P. Rly. Co. v. Fray*, 31 Kas. 739–751; *U. P. Rly. Co. v. Shannon*, 33 id. 446; *A. T. & S. F. Rld. Co. v. Weber*, 33 id. 543;

*A. T. & S. F. Rld. Co. v. Wagner,* 33 id. 660; *A. T. & S. F. Rld. Co. v. Brown,* 33 id. 760; *Smith v. Findlay,* 34 id. 324. See, also, *Murphy v. City of Brooklyn,* 23 N. E. Rep. 888; *Fields v. Davis,* 27 Kas. 405, 406; *A. T. & S. F. Rld. Co. v. Bales,* 16 id. 254; *City of Topeka v. Sherwood,* 39 id. 695.

*A. A. Harris,* and *Henry E. Harris,* for defendant in error:

We regard instructions Nos. 1 and 2, given at the request of plaintiff below, taken together, as not only unobjectionable, but as declaring the law to fit all the facts of the case. Counsel assume that Riley "quit work and voluntarily went elsewhere in pursuit . . . of his own pleasure," without the least testimony to warrant such an assumption. He testified, and the jury believed, that by permission of the foreman he started into the factory to warm. He was as much in the line of his employment in so doing as if he had remained outside. His duty did not require him to freeze his hands and feet, or to suffer physical discomfort; it was not so imperative. He was acting with the permission of his superior. *Ryan v. Fowler,* 24 N. Y. 410; *Marshall v. Stewart,* 33 Eng. L. & Eq. 1.

In leaving his work for a few minutes, by permission of the man whom the company had set over him, Riley did not outlaw himself, nor was the law's protection withdrawn even for a second.

The jury were fully instructed upon every possible phase of the case, and in substance they were told more than once that Riley could not recover unless the company knew, or by the exercise of ordinary care might have known, of the condition of the cistern. We think that this court, in the case of *A. T. & S. F. Rld. Co. v. McKee,* 37 Kas. 592, and cases there cited, settled the proposition now under discussion. See, also, *Morrow v. Comm'rs of Saline Co.,* 21 Kas. 484; *City of Wyandotte v. Gibson,* 25 id. 236; *Foster v. Turner,* 31 id. 58; *Dubois v. Campan,* 28 Mich. 304; *Insurance Co. v. Moore,* 34 id. 41; *Dole v. Boyd,* 47 id. 98; *Fowler v. Hoffman,* 31 id. 215; *Davis v. Farmington,* 42 Wis. 425; *Ham-*

*ilton v. Railroad Co.*, 36 Iowa, 31; *Skillen v. Jones*, 45 Ind. 136.

The opinion of the court was delivered by

HORTON, C. J.: The Parkinson Sugar Company is, and has been for several years last past, a corporation organized and engaged in the manufacture of sugar and syrup from sorghum cane, at its factory near the city of Fort Scott, in this state.   On the south side of its factory building, and attached thereto, the company has a trough or carrier, through which runs an endless chain, used to convey the stalks of sorghum cane into the building, to be subjected to the process of manufacture.   This carrier extends south from the building, and is about 150 feet in length.   As the sorghum cane is hauled in from the farm and delivered to the sugar company, it is thrown off in a long pile, parallel with, on the west side of, and a few feet from, this carrier.   Immediately adjoining the foundation wall under the south side of the building, and about four feet west of the door leading into the building, there is a small cistern, about three feet in diameter, and four and a half feet in depth, constructed and used by the company to receive, and into which is discharged, steam and waste boiling water from the boilers and engines in the factory. On the 10th day of October, 1888, Jesse William Riley, then between 17 and 18 years of age, became an employé of the sugar company, and from that time until the early morning of the 20th of the same month continued to work for the company, principally in carrying the stalks of cane from the long pile and placing them in the carrier.   While at work for the company, on the outside of its factory, about 4 o'clock in the morning of October 20, becoming very cold, he asked permission of Wagner, the foreman of the work in which Riley was engaged, to go into the factory for the purpose of warming himself.   Wagner gave the desired permission, and, while attempting to go into the door on the south side of the building, he fell into the uncovered cistern containing the waste boiling water, and was burned and scalded.   Subse-

quently, Jesse William Riley, by his father and next friend, William Riley, commenced this action in the court below, alleging in his petition substantially that the sugar company was guilty of gross negligence in the construction and maintaining of the cistern, and that young Riley, while engaged in its employment, and without any fault or negligence of his own, and without any knowledge of the cistern, fell into the same. Judgment was prayed for on account of the injuries received thereby, in the sum of $10,000. The jury returned a verdict in favor of the plaintiff for $1,000, and subsequently judgment was rendered thereon, together with costs. Material errors are alleged, and the more important of them we will refer to.

The jury specially found that young Riley, "at the time of his injury, was engaged in the line of his duty to his employer." On the part of the sugar company, it is contended that the finding of the jury is contrary to the evidence, because, "when Riley left his place of work for the purpose of entering the building, he was pursuing his own comfort and pleasure, and had, at most, only the part of a licensee to go to that portion of the premises near the cistern, and that he, as a licensee only, took the risks of accident resulting from the use of the premises in the condition in which they were."

1. Dangerous premises—injury to employe—finding —evidence. We think the evidence fully sustains the finding of the jury in this matter, because he was permitted by the foreman of the work to go into the factory for the purpose of warming himself. It was about 4 o'clock in the morning. Young Riley was cold. He was as much in line of his employment when going to warm himself as if he were going to the building to take his midnight meal, which he was accustomed to do; or if he had gone upon a call of nature to a water-closet in the building. (*Ryan v. Fowler*, 24 N. Y. 410; *Marshall v. Stewart*, 33 Eng. Law & Eq. 1.)

It is ruled that when an employé enters the service of a master he assumes all ordinary hazards incident to such service, and also other perils of which he has knowledge. But,

between the master and the employé, the master assumes the duty toward the employé of exercising reasonable care and diligence to provide the employé with a reasonably safe place at which to work; and, where the service required of an employé is of a peculiarly dangerous character, it is the duty of the master |to make reasonable provision to protect him from dangers to which he is exposed while engaged in the discharge of his duty. (*Railroad Co. v. Holt*, 29 Kas. 149; *Railroad Co. v. Moore*, 31 id. 197; *Railroad Co. v. Fox*, 31 id. 586; *Railroad Co. v. Wagner*, 33 id. 660.) Therefore, upon the plaintiff's petition and the evidence introduced, it was proper for the court below to submit to the jury, whether the sugar company was guilty of negligence in permitting a cistern containing hot water to be uncovered so near the door on the south side of the building; whether young Riley had any knowledge that the cistern was uncovered at the time of the injury, or could, by the exercise of ordinary care, have known of its existence; and whether, when he fell therein, he was in the exercise of ordinary care and diligence on his part.

The serious matter, however, which confronts us in this case, is the special findings of the jury. The trial court charged the jury that if they found for the plaintiff below, there could not be any recovery for loss of time, as young Riley was a minor, nor for his board, care, nursing, or medical expenses or attendance. The jury specially found that they allowed nothing for loss of time, medical attendance, expenses for nursing and sickness, physical pain, mental suffering, permanent injury, or exemplary damages; yet they specially found "$1,000 as damages for injuries received." When the special finding of facts is inconsistent with the general verdict, the former controls the latter. (Civil Code, § 287; *Railroad Co. v. Maher*, 23 Kas. 163.) If any reasonable basis or ground existed upon which the jury could give $1,000 damages for injuries received, in view of the other special findings, it might be said that the special findings were not inconsistent with the general verdict; but the

only grounds upon which damages are allowed for personal injuries, in the absence of permanent injury and exemplary damages, are for loss of time and pain or suffering. All of these are eliminated from the general verdict by the special findings of the jury. It is suggested that the damages were allowed for temporary injury, or disability; but temporary injury or disability is no basis for damages unless there is loss of time, or pain, or suffering. The court ruled loss of time out of the case. The jury found nothing for either physical pain or mental suffering. If it be said that the $1,000 damages for injuries received included probable pain and suffering after the trial — in the future, but not in the past — this is a strained and unreasonable construction.

Young Riley was injured on the 20th of October, 1888; both of his legs were badly scalded four or five inches above his knees, and his arm up to the shoulder; he was in bed most of the time until April, 1889; he was attended by two physicians, and one of them continued to visit him to the last part of March. If the jury allowed nothing for pain and suffering from the 20th of October, 1888, to the 25th of October, 1889, the date of the commencement of the trial, it cannot be presumed that they intended to allow $1,000 for the injuries after the return of the verdict. Injury resulting from the acts or omissions of others may consist in some cases of the actual pecuniary loss directly sustained, of the indirect pecuniary loss sustained in consequence of the primary loss; of the physical and mental suffering produced by the act or omission in question; the value of the time consumed in establishing the contested right by process of law, if suit is necessary; the actual expenses incurred, and the sense of wrong or insult in the sufferer's breast, resulting from fraud, malice, oppression, or willful wrong. (1 Sedgw. Dam., 8th ed., § 37.) Under the charge of the court and the special findings of the jury, there was nothing whereon to base the $1,000 allowed by the general verdict. Physical pain is always regarded as a subject for compensation; this compensation being its pecuniary equiva-

2. Verdict, inconsistent with charge and findings.

lent as measured by the jury.   Mental suffering with bodily suffering is also a subject for compensation.   If young Riley was entitled to any recovery, he should have had compensation for his physical pain and mental suffering during the many months he was confined at his home by his severe injuries.

Counsel for Riley criticise the special questions submitted by the trial court to the jury, and state that they objected to them.   No motion for a new trial was made on the part of Riley, and no cross-petition is filed in this court; therefore, we cannot examine at any length, for any good purpose, the criticisms upon the questions submitted.   This much, however, may be properly said: The trial court should have refused to submit questions to the jury which had no evidence to warrant them, or which related to points not in dispute, or upon elements of damages wholly withdrawn from the jury by the charge.   Therefore, the questions about loss of time, expenses for medical attendance and nursing, ought never to have gone to the jury.   These unnecessary questions undoubtedly confused and troubled the jury, when they had been specially charged not to allow any damages implied thereby. Being thus confused and possibly misled, it is not strange that the jury answered inconsistently.   The trial court ought to have had the special findings corrected or explained before the jury were discharged.   When physical pain is established, such pain and mental suffering are so closely connected that a single finding as to the damages allowed therefor is all that is necessary.   This court said, in *Morrow v. Comm'rs of Saline Co.*, 21 Kas. 484, that "the main object of special questions is to bring out the various facts separately, in order to enable the court to apply the law accurately, and to guard against any misapplication of the law by the jury."

(See, also, *Wyandotte v. Gibson*, 25 Kas. 236 ; *Foster v. Turner*, 31 id. 58; *Fowler v. Hoffman*, 31 Mich. 215; *Davis v. Farmington*, 42 Wis. 425.)

The special findings of the jury being in conflict with each other and also inconsistent with the general verdict, no judg-

ment can be entered thereon by this court.   The judgment of the court below, however, must be reversed on account of the conflicting special findings and the inconsistency between such findings and the general verdict, and the cause remanded for a new trial.

All the Justices concurring.