LEWIS H. OLSON v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.

May 2, 1899.

Nos. 11,574—(150).

**Railway—Injury to Brakeman—License—Jumping from Moving Caboose.**

From the evidence in this action it appeared that on arriving at a terminal yard as a brakeman on one of defendant's incoming freight trains, plaintiff, in accordance with a well-established custom among

brakemen, changed his clothing, leaving his working suit in the caboose or way car, although he knew that it was not at all probable that said caboose would be attached to the outgoing train to which he would next be assigned for duty. Assuming that because of such custom plaintiff would have a right, as a licensee, to return to the yard and to the caboose for the purpose of obtaining his clothes, it is held that this license would not justify him in going upon a caboose attached to a moving train, in search of his clothing, or in jumping from one of the platforms of said caboose, when through with the search. While engaged in these acts he was not in the service of defendant in the line of his employment, nor was he acting within the scope of his license. He had no cause of action against defendant for an injury caused by his coming in contact with a defectively constructed switch stand when jumping from the caboose.

Action in the district court for Hennepin county to recover $20,-000 damages for personal injuries. The case was tried before Elliott, J., and a jury, which rendered a verdict in favor of plaintiff for $6,000. From an order denying a motion for judgment, notwithstanding the verdict, or for a new trial, defendant appealed. Reversed.

*Albert E. Clarke*, for appellant.

*Jackson & Lancaster*, for respondent.

COLLINS, J.

Appeal from an order denying defendant's motion for a new trial in a personal injury action. Taking plaintiff's statement as true (and the jury must have so found), the only facts which we deem important in disposing of the case are as follows:

Plaintiff had been in defendant's service as a brakeman upon freight trains for over one year when the injuries were received. There were two freight train yards at Minneapolis, the northern terminus of the road,—one known as the "Cedar Lake" yard, where outgoing trains were made up, and from which they started; and the other, about 40 rods southerly, called the "Kenwood" yard, the end of the trip for all incoming freight trains. On the day in question plaintiff came into the yard last mentioned as a brakeman on train numbered 57 (conductor, Williams), arriving at 2:50 p. m., or within one hour thereafter. Just before the train reached the yard, plaintiff changed his clothes, leaving, as seems to have been

a custom among brakemen, his working suit in the caboose or way car.

He left the train at or near the yard, and, after going to his boarding house, near by, visited the train master's office, to see if he had been bulletined for his next trip. He found no orders, went away, and about 7 p. m. returned to the office. He then asked for a pass to Albert Lea, his home, to be used upon passenger train No. 6, which left Minneapolis that evening, his object being to go home on business. The train master stated that his next trip out would be at 5:20 next morning, on No. 34, but if he would go out and find another brakeman, by the name of Gilson, and induce him to go out on No. 34, next morning, the pass would be furnished, and he could go to Albert Lea. Plaintiff returned in a short time with Gilson, but meantime the train master had been informed of the sickness of a brakeman who was bulletined to go out at 10:40 p. m. on train No. 32 (conductor, Campbell), and therefore declined to issue the pass.

After some conversation it was agreed that plaintiff should go to Albert Lea that night as a brakeman on No. 32, while Gilson should go out next morning on No. 34. During this conversation plaintiff stated to the train master that he was tired and sleepy, having been on duty the previous night, and before going out would have to get his working clothes out of Conductor Williams' caboose, which, as he well knew, had, in accordance with the custom, been moved up into the Cedar Lake yard. At this the train master informed plaintiff that he could go out to the yard and sleep in Conductor Campbell's caboose until the train started, and for this purpose gave him a note to the other brakeman, there being at least two on each train, which required the latter to do certain preparatory work so that plaintiff could "sleep in the caboose as long as possible,—till leaving time."

Taking this note, plaintiff, accompanied by Gilson, went to one or two places in the city, and then to the Cedar Lake yard, where they found the caboose which was to go out on No. 32 (conductor, Campbell), and delivered the note to the other brakeman, Tyler, to whom it was addressed. It should be stated here that all freight trainmen were shifted about from train to train, but that each con-

ductor retained his own caboose; so that it was very improbable that plaintiff, or any other brakeman, would go out with the conductor in charge when he came in, and of course equally as improbable that the caboose attached to the outbound train would be that brought in with the incoming train. The plaintiff understood this thoroughly, for he had changed conductors and cabooses, as well as trains, nearly every trip during his term of service.

Plaintiff and Gilson left the caboose which was to go out with No. 32, to search for the one in which the clothes had been left. It was then dark. They went to several without finding the one they were looking for. Finally the plaintiff saw a train moving out of the yard,—No. 58,—which was due to leave at 8:45 p. m., and, thinking that the caboose attached might be the one he was looking for, stepped up on the rear platform, and entered, with Gilson. It was not the Williams caboose. After exchanging a few words with one of the trainmen, who happened to be in the caboose, plaintiff passed out upon the front platform, and attempted to step down upon the ground. According to his version of the affair, his foot caught under the throw bar of a switch, negligently located near the track and improperly constructed. He was thrown against the switch stand, and from there upon the ground in such a position that the rear wheels of the caboose ran over his left arm.

We shall assume, for the purposes of this case, that if, on these facts, plaintiff is entitled to recover, there exists no other ground for a reversal of the order appealed from, and the verdict in plaintiff's favor cannot be set aside. We shall also assume that the evidence as to the custom prevailing among brakemen to change clothing as they approached terminals, and to leave their working clothes in the cabooses at the end of trips was of such a nature as to warrant the jury in finding that such brakemen were licensed by defendant to do this very thing,—to leave their clothing in any caboose which happened to be attached to the train on which they had made a trip, and without regard to what was almost a certainty that with the next train to which they were assigned there would be another conductor, and a different caboose. Assuming this, it would seem to be true that these brakemen had the right

subsequently to visit these cabooses for the purpose of obtaining their clothing, and in so doing again became licensees.

Counsel for defendant concedes this. But it does not follow. from the fact that they were licensed to remove their clothing from the cabooses that the right could be exercised at all times and under all circumstances, or that an unreasonable use of this license could be made. It is elementary that the defendant company owed no duty to plaintiff if he was not, when injured, engaged in serving it in the line or within the scope of his employment. Although he was in its general service, the defendant could not be liable for injuries received while plaintiff was engaged in an enterprise foreign to his employment. If Olson was acting for himself when he got on the way car, or when he got off and encountered the switch, and was not exercising his right as a licensee in a reasonable manner, the defendant did not fail in the performance of its obligation, was not derelict, and is not liable for the unfortunate result; for it was only bound to exercise reasonable care while plaintiff was acting within and under his license, not when he went beyond, and was upon its trains or on its premises without justification. And defendant duly performed its duty when it furnished safe appliances and a safe place for plaintiff while he was engaged in the line of his duty. It was not negligent if at the time and under the circumstances it owed him no duty.

We have stated the manner in which plaintiff's injuries were received, and it is clear that he was licensed, not only to go to Williams' caboose to get his clothing, but also to Campbell's caboose, that he might obtain a few hours' sleep before the train started and his labors began; and while so occupied in a reasonable manner he would be acting within the scope and line of his employment. If, while sleeping in the caboose, a collision had occurred involving defendant's negligence, and plaintiff had been injured, it is quite probable that under the doctrine of Rosenbaum v. St. Paul & D. R. Co., 38 Minn. 173, 36 N. W. 447, damages could have been recovered. And probably, had he been run down in a negligent manner while in the yard, without fault of his own, an action could have been maintained.

But the present case is altogether different, and to support this

verdict we should be obliged to hold that, having a license to go to one caboose to get his clothes, he had the right in the nighttime to go all over the yard, and finally to jump upon another caboose attached to a moving train, make search for his clothing, and then, with the train still in motion, to jump off in the darkness in a yard filled with side tracks, switches, and other necessary appliances, to say nothing of switching engines and moving freight cars. Some of the reported cases have gone quite far in sustaining verdicts where the question was a close one with respect to the line of duty when the accident occurred, but not one of these approaches this on the facts. The plaintiff was not acting within the line of his duty, nor within the scope of his employment, when jumping from the caboose, nor was he within his license.

Reference has been made to the Rosenbaum case, and plaintiff's counsel insist that it warrants the verdict here. There is no ground for this view. Rosenbaum was rightfully on the train, and it was the duty of the company to provide a safe track. Here plaintiff was wrongfully upon a moving train. Nor was he injured by anything which happened to the train, but by the act of jumping off.

Counsel for plaintiff urge, in their brief, that their client was in fact acting under defendant's orders at the time of the injury, and call attention to the testimony found in folios 91 to 97 of the paper book. An examination of the testimony, which is the conversation between plaintiff, Gilson, and the train master at the latter's office at the time it was agreed that plaintiff should go out on No. 32, pretty conclusively shows that, if he had obeyed the train master's directions or orders, there given, he would have been asleep in Conductor Campbell's caboose when the accident happened, not far from 9 p. m., instead of pursuing a train in motion, and jumping on and off the platforms of the attached caboose as it moved through the yard. No injuries would have been received if the train master's directions had been promptly followed.

The verdict is set aside, and, as defendant's counsel moved for a verdict before the case was submitted to the jury, which motion should have been granted, and subsequently moved for judgment

notwithstanding the verdict, the court below is ordered to cause judgment to be entered in defendant's favor on the remanding of the case.