## Swift & Co. v. Nicholas McInerny.

1. Fellow-servants—*Following the Advice of a Fellow-servant.*— If an employe follows the advice of a fellow-servant and is injured, he can not, in law, charge his employer with the consequences.

2. Contributory Negligence—*What is—Illustration.*—Where an employe, after dark, with an unlighted lantern in his hands, in leaving the building where he is employed, takes no notice of where he is going and without looking down to see if there is a ladder or other safe means of egress, walks out of a window which he knew was twenty feet or more from the ground, fell and was injured, he was held guilty of contributory negligence and can not recover.

Swift & Co. v. McInerny.

3.  APPELLATE COURT PRACTICE—*Where a Cause Will be Reversed Without Remanding.*—Where a cause has been tried three times and the plaintiff has apparently produced all the evidence that can be secured, and especially where it seems that upon his own testimony he can not recover, the judgment of the trial court will be reversed without remanding.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899.   Reversed.   Opinion filed July 17, 1900.   Rehearing denied July 31, 1900.

JOHN A. POST and W. N. WILLIAMS, attorneys for appellant.

SULLIVAN & McARDLE, attorneys for appellee.

MR. PRESIDING JUSTICE HORTON delivered the opinion of the court.

In this case counsel for appellee concede the correctness of every point of law raised by counsel for appellant.   As to one instruction given at the instance of appellee complaint is made by appellant, but their counsel do not differ as to what the rule of law is, but as to whether the rule is clearly applied to the facts in the case.

This case has been three times tried with a jury.   The first trial resulted in a verdict of not guilty.   At the second trial there was a verdict in favor of appellee for the sum of $2,500, and the motion of appellant for a new trial was granted by agreement of counsel.   At the third trial there was a verdict for $4,000, and judgment upon such verdict, to reverse which the case is brought to this court by appeal.   A proper understanding of the case requires a somewhat extended review of the evidence.

About 6:30 P. M., November 20, 1892, appellee was injured upon the premises of appellant.   At that time appellee was in the employ of appellant in the capacity of a millwright's helper.   About 4:30 P. M. that day, six or eight men in the employ of appellant, and called a "gang," went to the engine and dynamo house of appellant to repair some machinery.   That house was about thirty feet

in length by about twenty feet in width and thirty feet in height. There was but one floor or story in the building, but there was what is called a platform upon three sides, twenty to twenty-five feet above the floor, and which is in some instances spoken of as a floor. This platform was near the wall, was three or four feet wide, with a railing along the side farthest from the wall. The entrance to the building was through a doorway to the main floor. In one corner was what was called here a fireman's ladder, that is, it was perpendicular and fastened to the wall. The platform was reached by ascending that ladder. In the west side or wall of said building was a window or sash door which was hung upon hinges, and opened in the same manner that a door is usually opened. The testimony is not quite clear as to the fact, but seems to sustain the conclusion that the sill of this window was about eighteen inches below said platform and some twenty to twenty-five feet above the ground. Running from said dynamo house over an alley to a building west, was a rubber belt used to convey power. That belt was inclosed by a belt box which was flat on top with a hand rail along one side. Such belt box did not end at or under said window, but the top thereof was about upon a level with said window sill and from four to eight inches to one side of said window.

Said gang of men entered the house through the door leading to the main floor. Most of them, including appellee, ascended to said platform by said fireman's ladder. After working there about two hours the helpers, including appellee, were excused by the foreman from further services that day. Three of them, Maloney, Weldon and appellee, started to leave the building, and in the order named passed along said platform to said window, which was open. As they started to leave, Weldon said to appellee, "Come this way, Mac," and appellee followed him. Maloney stepped down onto the window sill and by putting his arm around the window frame swung safely out onto the belt box. Weldon followed next and did the same thing. Appellee followed to the window sill, but instead of

swinging himself onto the belt box he stepped out of the window, fell to the ground, and was seriously injured. It was no part of the duty of Weldon as an employe of appellant, to advise or direct appellee where or how to go. When Weldon said to appellee "come this way," it was no doubt intended as a kindly suggestion by one employe to another, but it was by a fellow-servant, and not an act or suggestion for the consequence of which appellant can be held to be responsible. It is argued by counsel for appellee that it was the duty of the foreman, when Weldon said to appellee "come this way," to have warned appellee of the danger of going by way of the window. The foreman swears that he did not hear the statement. If appellee saw fit to follow the advice of a fellow-servant, he can not, in law, charge the appellant with the consequences. Weldon was a fellow-servant. He was in no sense or for any purpose a vice-principal. Appellee had never been employed in that building before. He went there and reached the platform by the means provided by appellant. Had he left the building by the route or means thus provided he would not have been injured. The foreman took him there by a safe route. He left at the suggestion of a fellow-servant by another route, not intended or provided by appellant as a means of egress for any one except the oilers. There was no obstruction to prevent appellee from going down by way of the fireman's ladder.

It is urged that appellant was negligent in providing a dangerous route or mode of exit from said building. The sufficient response is made to that suggestion, that appellant did not provide that way for the use of employes except for the oilers, as stated. ' They were expected to go that way to reach the middle of the belt box for the purpose of oiling, through the trap-door in the top of the belt box, what is called an idler, that is, a wheel supporting the belt. The belt box could be reached from that way only by climbing the perpendicular fireman's ladder which was provided as a means of access to the platform for the purpose of reaching the machinery in that building. It seems unreasonable

that any one should contend that appellant provided that ladder and that belt box, which' did not meet or connect with the door-window, as a mode or route of passage for its employes. On the contrary, the testimony shows that it was the positive instruction and direction emanating from appellant that the belt box should not be used by any one other than the oilers.

On behalf of appellant it is contended that appellee was guilty of contributory negligence and that therefore he can not recover damages against appellant. He testifies that there were lanterns there. He personally took two of them into the dynamo house. When he started to leave he took one that was not lighted. That was at a time in the year when it became dark before the hour appellee started to leave the building. The testimony shows that the men were using lighted lamps or lanterns. Appellee said he had never been there before, and that he did not know what the belt box was for. A part of the cross-examination of appellee is as follows:

"Q. When you approached the window, you say you saw Mr. Maloney step out, did you? A. Yes, sir.

Q. Did you notice whether he went up or down or on the side? A. I did not take no particular notice at all. I thought it was safe where they were going, as they gave me no warning.

Q. You did not see in which direction he went? A. No, sir.

Q. He may have gone to one side or may have gone up or down? A. Yes, sir.

Q. Did you see Mr. Weldon when he went out? A. No, sir.

Q. He was right ahead of you at that time? A. Yes, sir.

Q. And four or five feet from you? A. Yes, sir.

Q. You came next and walked right up there? A Walked right straight after him. He gave me no notice or anything, and I did not take any particular notice and walked clean out into the alley, head first.

Q. When you first got up there, did you look down to see whether there was a ladder going down outside of the building, or anything of that kind? A. No, sir.

Q. You didn't look down? A. I didn't pay no particular notice.

Q. Did you look down to see what there was there, or did you just step right out? A. No, sir, I just stepped right through; I did not take no particular notice. I thought it was safe to go where they went."

It thus appears from appellee's own testimony that after dark, in a strange place, with a lantern in his hand unlighted, he took no notice of where he was going—did not look down to see whether there was a ladder or other means of safe egress—but walked directly out of a window which he knew was twenty feet or more from the ground, without taking any notice as to where he was going, and fell and was injured. That was certainly contributory negligence, and for that reason, if for no other, the law will not permit him to recover in this case.

This being the third trial of this case, appellee has doubtless produced all the evidence that can be secured. It also seems to us that upon his own testimony he can not recover. Therefore the judgment of the Circuit Court will be reversed, but the cause will not be remanded.