# Southern Ry. Co. *v.* Bentley.

*Injury to Servant.*

(Decided June 7, 1911. Rehearing denied June 30, 1911. 56 South. 249.)

1. *Master and Servant; Injury to Servant; Complaint.*—Where the action was by a railroad employee for personal injury by being knocked from the side of a freight car by a branch of an overhanging tree, the complaint was not demurrable for not alleging that the plaintiff, when injured, was engaged in the discharge of his duties in the line of his employment, where the complaint alleges that plaintiff, while in the discharge of his duties, was engaged in riding on a train, and, while so riding, his feet were struck by a limb, projecting over the right of way.

2. *Same.*—To recover against an employer for injuries arising from a defect in the ways, works, machinery or plant used by the employer in his business, it is incumbent on the employee to allege that he was injured by such defect while in the discharge of his duties as well as the existence of the contract of service and he must prove such fact.

3. *Same; Want of Contributory Negligence.*—In suing for personal injuries due to the negligence of the employer the employee need not in his complaint negative his own contributory negligence.

4. *Same; Injuries; Way.*—The way of a railroad includes such adjacent space as is necessary for the unobstructed operation of a train thereon, and any permanent obstruction to its operation is a part of the way; hence, a tree projecting over a railroad track so as

to injure employees riding on its train is a part of the way of a railroad company within the purview of subdivision 1, section 3910, Code 1907.

5. *Same; Scope of Employment.*—The courts show a liberal regard for the interest of the servant in determining whether he was acting in the general line of his employment when injured by a defect in the ways; but where plaintiff was employed in unloading a gondola car, and when the engine started to take the car down to the switch plaintiff who was then on the ground, jumped on the car to ride down to the switch and back although there was no work for him to do at the switch, and he merely rode down to pass away the time until the car was returned, and was knocked off the car while it was in motion by an overhanging tree, he was not acting within the line of his employment so as to render the company liable.

6. *Same; Assumption of Risk; Jury Question.*—Under the facts in this case it cannot be said as a matter of law that the danger was so obvious as to make the employee assume the risk of being injured by coming in contact with the tree, and hence, the question of the assumption of risk is one for the jury.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by John B. Bentley by his next friend against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The complaint was as follows: "Plaintiff, who was under 21 years of age, sues the defendant, the Southern Railway Company, a corporation, to recover $2,000 as damages for injury received by him on, to wit, the 11th day of September, 1907. Plaintiff avers that on said date the defendant owned and operated a railroad in and through Decatur, Alabama, and in connection therewith maintained a switchyard in said town. On said date plaintiff was an employee of the defendant, and as such, and while in the discharge of his duties, was engaged in riding on one of defendant's trains, and, while so riding on one of defendant's switch tracks, plaintiff's feet were struck by a limb of a standing and growing tree projecting over on defendant's right of way, and in such close proximity to defendant's railroad track as to cause plaintiff to come in contact therewith, as he was so as aforesaid riding along said track on defend-

[Southern Railway Co. v. Bentley.]

ant's said train. Plaintiff avers that, by reason of his feet coming in contact with said limb, he was knocked down to and on the ground under the defendant's train, and so remained under said train until, to wit, four of the cars thereof passed over him, from which he sustained serious and severe injuries, to wit: (Here follows catalogue of injuries.) Plaintiff avers that his said injuries were caused by reason of a defect in the ways and works of the defendant, in that the limb of said tree projected over the defendant's right of way and was in such proximity to defendant's railroad track as to come in contact with cars when propelled there along, which defect arose from, or was not discovered or remedied owing to the negligence of the defendant, or of some one in its employ who was intrusted by it with the duty of seeing that its ways and works were in proper condition."

The grounds of demurrer noted in the opinion were as follows: (1) "It does not appear therefrom that the said plaintiff at the time of his injury was engaged in the discharge of his duty or the line of his employment as an employee of the defendant." (5) "The facts alleged in said complaint do not show that said limb constituted a defect in the defendant's ways or works, imposing a liability upon the defendant." (7) "It does not appear therefrom that the limb on said tree projected over defendant's right of way in such proximity to defendant's track as to come in contact with the persons rightfully on said cars and occupying a proper position thereon."

PAUL SPEAKE, for appellant. On the facts in this case the plaintiff assumed the risk of the injury from the tree, and was also guilty of contributory negligence barring recovery.—*Herrin's Case,* 131 Ala. 81; *Boyd's*

*Case,* 131 Ala. 356; *Knowles' Case,* 129 Ala. 410; 104 Ala. 509; 87 Ala. 709. Said limb was not a defect within the meaning of the statute.—*So. Ry. v. Shook,* 150 Ala. 631. The witness should have been allowed to answer whether the limb was large enough to brush a person off the car.—*B. R. L. & P. Co. v. Mullen,* 138 Ala. 614.

CALLAHAN & HARRIS, for appellee. The question of assumption of risk was one for the jury under the evidence.—*T. C. I. & R. R. Co. v. Farrington,* 39 So. 901; *G. P. R. R. Co. v. Davis,* 92 Ala. 309; *So. Ry. v. Howell,* 135 Ala. 649; *Osborn v. A. S. W. Co.,* 135 Ala. 571. An employee does not assume a risk created by the employer's negligence.—*A. G. S. v. Brooks,* 135 Ala. 401. Under the evidence it was a question for the jury as to whether or not the plaintiff was guilty of contributory negligence.—*G. P. Ry. Co. v. Davis, supra; So. Ry. Co. v. Howell, supra; K. C. M. & B. v. Burton,* 97 Ala. 255. The limb of the tree was a part of the way.—Authorities supra, and *L. & N. v. Banks,* 104 Ala. 508. The plaintiff was engaged in the line of his employment when he was injured.—*L. & N. v. Chamblee,* 50 So. 684.

PER CURIAM.—The plaintiff was a servant of the defendant, and his duties were to unload slag from cars in its yards at Decatur, to roll wheelbarrows, and do various things of that general nature. He had nothing to do with the operation or handling of engines or cars. According to the plaintiff's testimony, he and a number of fellow servants, similarly employed, were unloading a gondola car in a train consisting of three gondolas and three box cars. Before this work was completed, the switch engine came up, and started with the cars towards the switch, where the box cars were to be cut

out and the gondolas switched back. Plaintiff was on the ground when the train started for the switch, and did not know where it was going; but, not being ordered to remain, he and his colaborers jumped on the cars, it being their custom to "go from one part of the yard to another on the switch engine and cars," and to "ride from one part of the work to another"; and, when so riding to assume any position anywhere they might select on any of the cars, with the knowledge and tacit permission of the defendant's foreman in charge of this particular work. Plaintiff got on a gondola car just in front of the three box cars. The sides of this car were about as high as a man's head, and plaintiff was standing on the outside of the car at a corner. He "had one foot on the end of the sill, and one on the outside step," when the protruding limb or limbs of a tree growing near the track dragged him off. In falling he caught by his hands, but was torn loose, and fell between the rails, where he was bruised and injured by the three box cars passing above him.

In explanation of the action of himself and his colaborers in getting on the cars on this occasion, plaintiff says: "We got on to ride down to the switch and back like some of the rest of them. We did not have work to do down at the switch. We always rode on the cars when they came up after the cars we were working on and moved them anyhere else; we always rode on the cars." And, further, "we were riding down for the box cars to be cut out, and the slag cars switched back. We were working on this car when they came to do the switching." There was other testimony both for plaintiff and defendant, but the foregoing is a fair statement of the plaintiff's case, as favorable to him as any phases of the evidence will permit of.

Seven grounds of demurrers were assigned to the complaint, all of which were properly overruled. Of the three insisted on in counsel's brief—the first, fifth, and seventh—it is sufficient to say that the first is fully refuted by the inspection of the complaint; and that the seventh in effect seeks to require the plaintiff to aver facts in negation of his own contributory negligence, which is of course unnecessary.—*C. & W. Ry. Co. v. Bradford*, 86 Ala. 574, 6 South. 99, and cases cited; *Broslin's Case*, 114 Ala. 398, 21 South. 475. The fifth depends upon the erroneous theory that a tree projecting over or against a railroad track so as to strike and injure employees riding on a train in the discharge of their duties, is not a part of the ways or works within the meaning of the statute.

It has been expressly held by the Supreme Court that a rock projecting from the side of a railroad cut far enough to endanger brakemen in the discharge of their duties, is a defect in the roadway.—*Ga. Pac. Ry. Co. v. Davis*, 92 Ala. 300, 9 South. 262, 25 Am. St. Rep. 47. In principle there can be no difference between a rock and a tree. Each is a part of the soil, and permanent in its nature. On the other hand, it is well settled by our decisions that a movable object temporarily placed in dangerous proximity to a railroad track is not a defect in the track.—*K. C. M. & B. R. R. Co. v. Burton*, 97 Ala. 240, 246, 12 South. 88. The opinion in that case discusses the subject quite fully, and applications of the principle may be found also in *So. Ry. Co. v. Shook*, 150 Ala. 361, 43 South. 579, and the cases therein cited.

Obviously, the *way* of a railroad is not merely its rails, but also such adjacent and superjacent space as may be requisite for the unimpeded operation of its rolling stock. And, if an obstruction be permanent in its nature, as opposed to that which is transient merely, if

it be inherent in the way, as distinguished from that which is foreign and incidental only, it is clearly a part of the way within the meaning of subdivision 1 of section 3910 of the Code of 1910. Nor do we conceive that it would make any difference in the present case whether the tree was growing out of the soil on the right of way, or out of adjacent soil.—*C. of G. Ry. Co. v. Alexander, Adm'r,* 144 Ala. 257, 40 South. 424.

The record shows that the defendant pleaded in short by consent, first, not guilty; second, proximate contributory negligence on the part of plaintiff; and, third, plaintiff assumed the risks of injury from said limb. Upon these several issues the general affirmative charge was requested in favor of the defendant; and the refusal of the trial court to give this charge presents for our consideration the really vital questions in the case.

A servant who would recover against the master for injury resulting to him by reason of a defect in the ways, works, machinery, or plant connected with, or used in, the business of the master, must in his complaint aver, not only that he was in the service of the master, but also that, while in the discharge of his duties as such servant, he was injured by reason of such defect.—*So. Ry. Co. v. Guyton,* 122 Ala. 240, 25 South. 34; *S. S. & I. Co. v. Green,* 159 Ala. 178, 49 South. 301.

And the averment must be supported by proof that at the time of the injury he was acting within the scope of his employment, or within the general line of his duty as related or as incidental to that employment. In determining what acts fall within these limits, in so far as the master's liability to the servant is concerned, courts have manifested a liberal regard for the just interests of the servant. It has been held by this court that the master must furnish the servant a safe way of ingress to, and egress from, his work, over the master's

premises.—*Whatley v. Zenida Coal Co.*, 122 Ala. 129, 26 South. 124; *Virginia Bridge Co. v. Jordan*, 143 Ala. 610, 43 South. 73. And in *B'ham Rolling Mill Co. v. Rockhold*, 143 Ala. 115, 127, 42 South. 96, 100, it was said: "While the mere act of *getting water* is not a part of the duties of the employee, yet it is a physical necessity which must be attended to while the employee is engaged in his duties, and he is entitled to the same protection in the interval when he leaves his work to get water as when he is actually working; and, whether the water is provided by the employer or by himself, the employee has a right to pass over the ways, provided by the employer, in going to and from the place where his thirst is slaked." So, in *Southern Coal & Coke Co. v. Swinney*, 149 Ala. 405, 42 South. 808, where a miner, leaving his work prematurely on account of sickness, loitered on the premises for ten minutes to explain his action to the superintendent, and was injured while so loitering, he was held to have been nevertheless still in the master's service. In *Boss v. Northern Pacific R. R. Co.*, 5 Dak. 308, 40 N. W. 590, a section hand boarded a train to go down the track to dinner, which was the usual mode of going to dinner, adopted at the request of the foreman in charge in order that the hands *might get back to their work* more expeditiously, and was injured by a switch stand too close to the track; and the court held him to be still within the protection of the duty owed by a master to a servant.

In *Cleveland, etc., R. Co. v. Martin*, 13 Ind. App. 485, 41 N. E. 1051, where an employee was eating his midday meal in a building, as sanctioned by a long-established custom, and was injured owing to the defective condition of some of the appliances used therein, it was held that although eating his dinner was not ordinarily an incident of his service, yet it may become so if the

[Southern Railway Co. v. Bentley.]

master allows so short a time for this purpose that the servant must eat it on or in the immediate vicinity of the place of his work.

In *Broderick v. Detroit Union Depot Co.,* 56 Mich. 261, 22 N. W. 802, 56 Am. Rep. 382, a common laborer, remaining on his employer's premises during the noon recess to eat his dinner, was thereafter requested by the foreman to close a ventilator in the boiler room, a task outside of the general line of his regular work. In attempting to do so, his hand was badly injured by reason of a defect in the structure of the ventilator. In holding that the employer was liable, the court says: "It is easy to perceive that closing the ventilator would be beneficial to the master's interests if it facilitated the work of thawing out the steam pipes by raising the temperature in the room, or if it added to the comfort and convenience of the employees of the master, and thus enabled them to perform their duties better."

In *Parkinson Sugar Co. v. Riley,* 50 Kan. 401, 31 Pac. 1090, 34 Am. St. Rep. 123, a boy 18 years old was at work on the outside of a sugar factory, and becoming very cold about 4 a. m. asked permission of the foreman to go into the factory to warm himself. Permission being given, in attempting to enter one of the doors he fell into an uncovered cistern and was seriously injured, and the court held that in thus going to warm himself he was engaged in the line of his duty,

Other instances in point will be found in the cases cited in 2 Labatt on Master and Servant, pp. 1840-48.

In the present case, as the engine started down to the switch plaintiff, who was *on the ground,* jumped on the gondola car "to ride *down to the switch and back* like some of the rest of them," although there was *no work for him to do at the switch.* It thus appears with absolute certainty that this action on plaintiff's part was en-

tirely foreign to any duty pertaining to his service, and was not designed in the remotest degree to expedite or facilitate the work in hand, nor any work in the master's behalf. It saved no time, achieved no advantage, and was in no way related to the comfort, convenience, or well-being of plaintiff. It was therefore plainly but a playful mode of passing away a few otherwise idle moments; and while thus indulging his fancy for amusement, and subjecting himself the while to dangers wholly unrelated to his service, he cannot, on any principle or by any precedent with which we are acquainted, hold the master to accountability, *as a master,* for his self-invited calamity.

These views and this conclusion find ample confirmation in the following authorities: *Ga. Pacific Railroad Co. v. Propst,* 85 Ala. 203, 4 South. 711; *McDaniel v. H. A. & B. R. R. Co.,* 90 Ala. 67, 8 South. 41; *Southern Railway Co. v. Guyton,* 122 Ala. 240, 25 South. 34; *Kennedy v. Chase,* 119 Cal. 637, 52 Pac. 33, 63 Am. St. Rep. 153; *Olson v. Minneapolis, etc., R. R. Co.,* 76 Minn. 149, 78 N. W. 975, 48 L. R. A. 796; *Ellsworth v. Metheney,* 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389; *Swift v. McInerny,* 90 Ill. App. 294; *P. & C. R. R. Co. v. Sentmeyer,* 92 Pa. 276, 37 Am. Rep. 684; *Wright v. Rawson,* 52 Iowa 329, 3 N. W. 106, 35 Am. Rep. 275; *Howard v. Southern Ry. Co.,* 132 N. C. 709, 44 S. E. 401.

It may well be—and we do not deny—that, had there been any work for plaintiff to do at the switch, or at any other point along the route of this train, in riding thereto as he did, without objection from the foreman in charge, he was acting within the line of his service, and this though he might reasonably have walked to such point, and though riding from place to place about the yards on these cars was not in the contemplation

of the master with respect to plaintiff and other yard workmen of the same class. On the facts shown by the record, the plaintiff failed to make out his case, and the defendant was entitled to the general affirmative charge on the plea of not guilty.

Plaintiff's mere knowledge of the presence of the tree near the railroad track did not of necessity inform him that it was a dangerous obstacle and likely to injure a person riding on the side of a passing car. Nor can it be said as a matter of law that his opportunities to judge of the danger from the projecting branches to one so riding were sufficient to render that danger so obvious to his senses that, as a prudent man, he ought to have been deterred from the undertaking in question. Whether there was such an assumption of the risk of being injured by contact with the tree, so as to deny to plaintiff the right of a recovery therefor, was therefore a question for the jury, and was properly submitted to them.—*Southern Railway v. Guyton,* 122 Ala. 241, 25 South. 34.

For any person, employee or otherwise, to take such a position on a car as the plaintiff is shown to have taken in this case, and thus *to ride,* would ordinarily be negligence per se; and, for any injury not wanton or intentional, to which that position proximately contributed, he could not recover. But, if it be conceded that plaintiff was properly riding on this car in the line of his service, the distance of the locomotion being short, the speed of the train very slow, and the exigencies of the service requiring frequent and rapid boarding and alighting from the cars, we are unable to say that plaintiff would, under these conditions be guilty of negligence per se in assuming the position he did on this car. He was riding with one foot on the rear sill, and the other on a side step, and it may be that these sup-

24—CA

ports were so far apart, his feet so far separated, and his resulting posture so awkward and insecure, that he was guilty of negligence in law in so standing on any moving car. But as to this we are unable to judge from the evidence before us.

It is unnecessary to discuss the other questions argued in the briefs of counsel, since the judgment of the trial court must be reversed for the error of the court in refusing the general affirmative charge as requested by the defendant.

Reversed and remanded.

NOTE.—This opinion was prepared by Mr. Justice Somerville, of the Supreme Court, before the transfer of the case to this court, and is adopted by this court.

