# Whatley, Admr. *v.* Zenida Coal Co.

*Action against an Employer to Recover Damages for Alleged Negligent Killing of Employe.*

1. *Master and servant; sufficiency of complaint counting on defective ways, works and machinery.*—In an action against an employer to recover damages for the death of an employé, a count of the complaint which alleges that the injuries resulting in the death of plaintiff's intestate were caused by the defective condition of the ways, works and machinery in use by the defendant, but which does not specify the defects, is insufficient and subject to demurrer.

2. *Same; mine owner not required to cut a manway; sufficiency of complaint.*—The owner of a coal mine, which is being operated, is not required, as matter of law, to cut and maintain a manway, different and separate from the slope through which coal is brought to the surface, for the ingress and egress of em-

ployés; and, therefore, in an action against a mine owner to recover damages for personal injuries to an employé, a count of the complaint which bases the plaintiff's right of recovery upon the alleged negligence of the defendant in not cutting and maintaining such man-way, presents no cause of action, and is subject to demurrer.

3. *Same; engineer of a stationary engine at a coal mine fellow servant of other employes; sufficiency of complaint.*—A person in charge of a stationary engine, at the mouth of a coal mine, used for the purpose of drawing the tram cars out of the slope by means of a cable, is a fellow servant of the employés of the coal company, whose duties require their service in the mine; and where one of such employés is injured by reason of the negligence of the person in charge of such stationary engine, the employer is not liable for damages under the statute, (Code of 1896, § 1749, subd. 4; Code of 1886, § 2590, subd. 5); such fellow servant of the injured employé not being in charge of an engine "on the track of a railway."

4. *Same; action against coal mining company; when general charge improperly given; case at bar.*—In an action against a coal mining company to recover damages for personal injuries to an employé, which resulted in his death, it was shown that the only way in and out of the mine was by a slope along which was a tramway, on which cars were let down into and drawn up from the mine by means of a cable which ran in the middle of the track, and was attached to the cars. Along the slope posts were placed on either side across which beams were laid to support the roof. At nearly every point along the tramway a person could get off the track on the approach of the cars, but in some places it was necessary to walk between the rails, which was inconvenient and dangerous when the cars were below, on account of the cable running in the middle of the track. Plaintiff's intestate at the time of the accident was in the employ of the defendant in charge of the pumps in said slope, and the duties of his employment required him to go up and down the slope to look after the water pipes. While going up the slope towards the entrance some distance behind three tram cars that were being hauled up, the cars became detached from the cable, and running down the slope, were derailed and struck one of the posts supporting the roof and caused it to fall on plaintiff's intestate who was not on the track, inflicting the injuries from which he died. It was shown that just before the accident, the superintendent of the mines sent a note to the deceased, requesting him to come to the top of the slope. There was evidence from which the jury might have inferred that the death of plaintiff's

[Whatley, Admr. v. Zenida Coal Co.]

intestate was caused by a defective pin that connected the cable to the cars, or that it was caused by the defective track, as charged in two separate counts, respectively. There was no evidence that he knew of or ever had any opportunity of knowing of any defect in the coupling pin, if such defect existed. There was no direct evidence that he had any knowledge of the alleged defects in the tramway. *Held*, that it can not be said as a matter of law that

(1). Plaintiff's intestate was guilty of contributory negligence in trying to ascend the slope while the tram cars were being drawn up ahead of him; or,

(2). That he knew of the defective conditions complained of and by continuing in the service after they could have been remedied, assumed the risk of injury from them, or,

(3). That he was not acting within the line of his employment when he was killed. But that these were questions to be determined by the jury from the facts proven; and that, therefore, the general affirmative charge should not have been given for the defendant.

APPEAL from the Circuit Court of Shelby.

Tried before the HON. GEORGE E. BREWER.

This action was brought by the appellant, Tyre W. Whatley, as administrator of the estate of Thos. J. Whatley, deceased, against the Zenida Coal Company, to recover damages for the alleged negligent killing of plaintiff's intestate. The complaint as amended contained six counts. The first count was as follows: "The plaintiff as such administrator claims of the defendant the sum of ten thousand dollars as damages, for that whereas on August 22d, 1893, the defendant Zenida Coal Co., a corporation, was engaged in owning and operating a coal mine near Helena, in said State and county, that in operating said mine the coal was drawn up out of said mine by means of tram cars drawn up a steep incline on a tramway by a chain attached to said cars and wound around a drum at the top near the entrance; that at the time of the grievance hereinafter named, plaintiff's intestate, Thomos J. Whatley, was in the employment of the defendant in the capacity of engineer to run the pump engine which was situated down in said mines; that the only means of ingress and egress to and from said work was up and down, along or on said tramway; that on said

August 22d, 1893, while plaintiff's intestate was engaged in his said employment in said mines, he started to leave said mines, in the regular course of his employment, by going up said incline by the side of said tramway when three tram cars loaded with coal which were being pulled up said tramway ahead of him by means of said chain and drum, broke loose or became detached from said chain and ran back down the steep incline with great velocity, and ran off the track and against a prop placed there to support the roof and knocked said prop against said decedent's head, so injuring him that he died therefrom in a few hours. All of which was caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, which said defects arose from and had not been discovered or remedied owing to the negligence of defendant or some person in the service of defendant and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition. To the damage of plaintiff ten thousand dollars, wherefore he brings this suit." The prefatory allegations in each of the other counts of the complaint were the same as those contained in the 1st count. The allegations of negligence in each of the other counts, respectively, were as follows:

2d Count. "All of which was caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, to-wit, the coupling pin, coupling the tram cars to the chain was defective, improperly constructed and short, thereby causing it to jolt out and the cars to be detached from said chain and be precipitated down said incline, which said defects arose from or had not been discovered or remedied owing to the negligence of the defendant or some person in the service of defendant and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition."

3d Count. "All of which was caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, to-wit, the said tramway was defective, improperly constructed, out of line and rough, thereby causing

said cars to run off the track as they came down the incline, which said defects arose from or had not been discovered or remedied owing to the negligence of the defendant or of some person in the service of the defendant and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition."

4th  Count.  "All of which was caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, to-wit, no man-way was provided by the defendant to afford ingress and egress to decedent to and from his work, wherefore he was compelled to travel on or along said tramway, which said defect arose from or had not been discovered or remedied owing to the negligence of the defendant or of some person in the service of the defendant and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition."

5th  Count.  "Said injury was caused by the negligence of the engineer of the defendant, who was running the engine which was drawing said cars up said incline, which said negligence consisted in running said engine in a negligent, reckless and careless manner, by reason of which the said cars were jolted and jerked, by reason of which jerking and jolting the coupling pin was jolted out allowing the cars to become detached and escape down said incline and said cars ran against a prop and knocked it against plaintiff's intestate, whereby he was killed."

6th Count.  "Said injury was caused by reason of said defendant's negligently having in its employment an unskillful and incompetent engineer to run the engine which was pulling said cars, and that said engineer was running said engine at the time plaintiff's intestate was killed, and run it in so reckless, unskillful and negligent a manner as to cause the cars to become detached from the chain,  whereby they were  precipitated down said slope or incline  and ran against a prop  knocking it against plaintiff's intestate whereby he was killed."

To the 1st count, the plaintiff demurred  upon the following grounds:  1st.  Said count does not specifi-

[Whatley, Admr. v. Zenida Coal Co.]

cally set out or describe any defect. 2d. There is no averment as to how the alleged defect arose. 3d. There is no specific averment of negligence on the part of the defendant· 4th. There is no averment that the defendant or any of its employés knew of the defects alleged to have caused the injury.

To the 2d count the defendant demurred upon the following grounds: 1st. It is not alleged in said count in what the defect in the coupling pin consisted, or how the coupling pin was improperly constructed. 2d. It is not alleged that the defendant knew of the alleged defect. 3d. It is not alleged whether or not plaintiff's intestate knew of said alleged defect. 4th. No specific negligence on the part of the defendant is alleged. 5th. It is not alleged that sufficient time had elapsed after the alleged defect in the coupling pin was made known, for the defendant to have the same remedied.

To the 3d count, the defendant demurred upon the following grounds: 1st. Said count does not aver in what the alleged defect in the tramway consisted, nor in what the improper construction of said tramway consisted. 2d. There is no averment that the defendant knew of the alleged defect or improper construction of said tramway. 3. There is no averment of any specific negligence on the part of the defendant.

To the 4th count, the defendant demurred upon the following grounds: 1st. Because said count does not allege any defect in any of the ways, works, machinery or plant of the defendant. 2d. Said count does not allege facts sufficient to show that the man-way, if constructed, would have prevented the injuries complained of. 3d. Said count does not contain a statement of facts, which, if true, fixes any liability upon the defendant.

To the 5th count, the defendant demurred upon the following ground: Said count seeks a recovery for the alleged negligent act of a fellow servant of the plaintiff's intestate, while such fellow servant was engaged in running a stationary engine, and the defendant is not liable for the negligence of plaintiff's intestate's said fellow servant.

To the 6th count the defendant demurred upon the following grounds: 1st. It is not averred in said count that the defendant failed to exercise due care in the selection and retention of its said engineer. 2d. It is not averred in said count that the defendant knew of the incompetency of said engineer. 3d. The facts alleged in said count do not show negligence on the part of the defendant.

The court sustained the demurrer to the 1st, 4th and 5th counts of the complaint, and overruled them as to the 2d, 3d and 6th counts. The defendant filed the plea of the general issue and several special pleas, and after the demurrers to the special pleas were overruled, the plaintiff filed several replications thereto, to which replications the defendant separately demurred. Under the opinion on the present appeal, it is unnecessary to set out in detail these several pleas, demurrers and replications and the rulings thereon.

On the trial of the case, the evidence introduced on behalf of the plaintiff tended to show the following facts: The defendant, the Zenida Coal Company, owned and operated a coal mine. The entrance to and from the mine both for the men and for the cars was by way of a slope, which was constructed at an angle of between 34 and 38 degrees. In the middle of this slope there was constructed a tramway, upon which tram cars were let down into the mine, and when loaded were brought up to the top by means of a wire cable. This cable was attached to the cars by a clevis and this clevis was fastened to the car with an iron pin between 4 and 4½ inches long. When thus coupled to the car the pin extended beyond the clevis from ½ inch to an inch. The slope was 900 feet deep and at some places 10 feet wide and at others from 16 to 20 feet wide. The track was between 3 and 4 feet wide. Along the slope on either side, there were constructed posts across which beams were laid to hold up the roof of the slope. In the slope there were two pumps, an upper and a lower pump, which was used for pumping water from the slope to the top of the mine. The plaintiff's intestate, at the time of the accident, was in the employ of the defendant, and was in charge of pumps in said slope. In the discharge of his duties, it was nec-

essary for him to superintend and look after the condition of the water pipes, through which the water was pumped to the top of the mine; and in the discharge of this duty, it was necessary for him to go back and forth along the slope. The tramway was badly out of repair; not being straight in some places, and in others the cross ties were nearly cut in two by the wire cable used for pulling the cars out of the slope. The coal was drawn up out of the mine by means of tram cars drawn by the cable attached to said cars, which cable was wound around a drum at the top of the slope near the entrance, and this machinery was operated by a stationary engine, situated near the entrance to the slope. Just before the accident, the superintendent of the mine sent a note to the plaintiff's intestate, requesting him to come to the top of the slope. The plaintiff's intestate, going from the upper pumping station, which was between 500 and 600 feet from the entrance, met with the accident causing his death. While three loaded tram cars were being pulled out of the slope, they became detached from the cable and ran down the incline, striking one of the posts supporting the roof, and this post struck the plaintiff's intestate on the head, causing the injuries from which he died. Neither the clevis nor the pin which attached the clevis to the cars was broken. At the time of the accident, the regular engineer who operated the stationary engine at the entrance, to pull the cars from the slope, was not in charge of said engine, but it was being operated by the fireman, and the evidence for the plaintiff's intestate was to the effect that said fireman pulled the cars out of the slope more rapidly than did the regular engineer and caused them to jerk.

It was also shown that the attention of the foreman or superintendent of the mine was called to the fact that the pin which fastened the clevis to the cars was too short; and his attention was also called to the defective condition of the track. The other facts necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion. The defendant introduced no evidence.

The court, at the request of the defendant, gave the general affirmative charge in its behalf, to the giving of

which charge the plaintiff duly excepted. There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

BROWNE & LEEPER and LONGSHORE & BEAVERS, for appellant.—The court erred in giving the general affirmative charge for defendant. The cause was made out for the consideration of the jury under either of the counts left in the complaint after a demurrer, in the court below. "The question of negligence is always deemed one of fact for the determination of the jury in all cases of doubt, either where the facts are disputed, or where different minds may reasonably draw different inferences or conclusions."—*City Council of Montgomery v. Wright*, 72 Ala. 421; *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487; *A. G. S. R. R. Co. v. Dobbs*, 101 Ala. 219.

R. W. COBB, *contra*.—The 1st, 2d and 5th counts were an attempt to recover of defendant damages under the first clause of section 2590 of the Code of 1886, and the demurrer was properly sustained.—*C. & W. R. R. Co. v. Bradford*, 86 Ala. 574; *Seaboard R. Co. v. Woodson*, 94 Ala. 146; *Ensley Railway Co. v. Chewning*, 93 Ala.. 26; *Phœnix Ins. Co. v. Moog*, 78 Ala. 284; *L. & N. R. R. Co. v. Bouldin*, 110 Ala. 185.

The appellant assigned only one ground of demurrer to defendant's 2d and 3d pleas: "That defendant could not avoid its said negligence by showing violation of instructions and orders of defendant." This court without an exception has held that disobedience of orders and instruction will bar a recovery.—*Pryor v. L. & N. R. R. Co.*, 90 Ala. 32, and authorities there cited; *Woodward Iron Co. v. Jones*, 80 Ala. 124; *L. & N. R. R. Co. v. Watson*, 90 Ala. 68; *Pac. R. Co. v. Propst*, 83 Ala. 518.

Under the evidence in the case the defendant was entitled to the general affirmative charge. If the accident occurred from some unaccountable cause there can be no recovery.—*Tuck v. L. & N. R. R. Co.*, 98 Ala. 150; *L. & N. R. R. Co. v. Stutts*, 105 Ala. 368.

Track of railroad is a dangerous position *per se*.—*Andrews v. Bir. Min. R. R. Co.*, 99 Ala. 440; *Schlaff v.*

*L. & N. R. R. Co.*, 100 Ala. 377; *Davis v. Western Railway of Alabama,* 107 Ala. 626; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368.

If an employé places himself in a dangerous position *per se* it will bar a recovery.—*Andrews v. Bir. Min. R. R. Co.,* 99 Ala. 438.

An employé assumes the risk of the dangers incident to the employment.—*Davis v. Western Railway,* 107 Ala. 626; *Schlaff v. L. & N. R. R. Co.,* 100 Ala. 377; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368; *Bir. R. & E. Co. v. Allen,* 99 Ala. 359.

McCLELLAN, C. J.—The first count of the complaint was bad in that it did not specify the defect in defendant's ways, works, machinery or plant of which it complains.

It cannot as matter of law be said to be the duty of persons operating coal mines to cut a manway, different and separate from the slope through which coal is brought to the surface, for the ingress and egress of their employés.  Count 4, therefore, presented no cause of action.

The 5th count ascribed intestate's death to the negligence of a person in charge of a stationary engine.  This person was a fellow servant of the deceased; and not being in charge, etc., of an engine *on the track of a railway,* the defendant is not liable for his negligence in operating the engine under his control.  The demurrer to this count was properly sustained.

There was no evidence offered on the trial in support of the pleas which were sustained against plaintiff's demurrer, and hence it is unnecessary to consider the sufficiency of those pleas or of replications to them.

The evidence tended to support the second and third counts, which averred, respectively, a defective coupling pin and a defective tramway·  There was also evidence from which the jury might have inferred that the death of plaintiff's intestate was caused by the defective pin as charged in the second count, or that it was caused by the defective track as charged in the third count.  Either conclusion thus open to the jury would have entitled plaintiff to recover, unless (1) he was

guilty of contributory negligence in attempting to go up the slope while tram-cars were being drawn up ahead of him, or (2) he knew of the defective conditions complained of and by continuing in the service after they should have been remedied assumed the risks of injury from them, or (3) he was not within the line of his employment at the time and place when and where he was killed. In our opinion negligence cannot be affirmed as a matter of law upon the mere fact that at the time he was killed the intestate was going up the slope while tram-cars were being drawn up some distance ahead of him. All ingress and egress into and out of the mine was along this slope, and it was necessary in pursuing it to walk in many places between the rails of a narrow track. As we understand the evidence, when the cars being handled at the moment whether passing up or down were below a given point there was a steel wire cable running at the rate of from fifteen to twenty miles an hour along the center of this narrow track. This, of course, tended to make the track an inconvenient and even to some extent a dangerous pathway while the cars were below the person desiring to go into or come out of the mine. On the other hand, to enter upon the track and attempt to pass along it below cars that were being drawn up or let down into the mine subjects the person making the attempt to the danger of the cars breaking loose from the cable and precipitating themselves down the steep grade of the slope. But this, of course, would not ordinarily happen, and given proper appliances and due care in the use of them it might well be argued that it would never happen. Now, when to these are added the further considerations that at nearly every point along the tramway a person could get off the track on the approach of descending cars, and at several places there were cells or holes in the walls of the slope which would afford safety even from derailed cars, and that the occasions of deceased's employment required him to go up and down the slope, we are not prepared to say as a matter of law that he was guilty of negligence in trying to ascend the slope as the evidence shows he did, especially as it appears that he was not on the track

when stricken, and was not stricken directly by the descending cars, but was killed by a post which the derailed cars struck and knocked against him. Whether he was guilty of negligence under all the circumstances was a question about which prudent and reasonable men might differ, and it should have been left to the jury.

So as to the inquiry whether he knew of the defects sufficiently long to render his continuance in the service the assumption of the risks incident to them. There was no evidence that he knew or ever had any opportunity of knowing the defect in the coupling pin, if such defect existed. As to the alleged defects in the tramway, there is no direct evidence that he had any knowledge of them. The most that can be said is, that while it was no part of his duty or business to be on the lookout for such defects yet he had opportunities in the course of his employment to observe these defects, the opportunities and the defects being of such character as to afford ground for an inference that he had observed and did know of the defects. But this inference was for the jury. They were not obliged to indulge it. And whether the facts warranted its deduction should have been submitted to them. It is always for the jury to draw or not to draw inferences from facts proven, unless it is a matter of legal presumption, which this clearly is not.

Nor do we think it was for the court below to declare that the deceased was not acting within the line of his employment when he was killed. He had to go to and from his work along this slope, and defendant owed him immunity from hurt through such negligence as is counted on while seeking ingress to and egress from his work in its mine; and it does not appear but that it was time for him to quit work and leave the mine. Moreover, there was evidence in the case that at the very moment he was killed he was wanted at the mouth of the mine by the defendant's foreman, presumably on defendant's business, and there is at least room for the jury to find that he knew he was wanted, though whether he knew it or not the fact that a note had been sent down the mine from the foreman requiring his presence at the surface was competent as shedding light upon the range of his duties. And beyond all this, it is clearly made to

appear that it was his duty to look after the water pipes which extended along the slope through its entire length, to prevent or stop leaks, etc., and the discharge of this duty would necessarily require him to go up and down the slope. At least, all this was sufficient to put it beyond the power of anybody but a jury to say that he was acting beyond the range and scope of his employment at the time he was killed.

The circuit court, therefore, erred in giving the affirmative charge for the defendant; and for this error the judgment must be reversed. The cause is remanded.

Reversed and remanded.