# Virginia Bridge & Iron Co. *v.* Jordan.

*Action by Employee for Personal Injuries.*

1. *Master and servant; ingress and egress to and from place of work, employment continuous during.*—If in going to and from his work the servant has to pass over the premises controlled by the master, his employment continues during the period consumed in traversing said premises for such purpose.

2. *Same; same; duty of master to servant.*—The duty of the master to the servant, not negligently to cause injury to the servant, extends as well to the time consumed by the servant in his necessary ingress and egress over the premises of the master, as to the time when the servant is actively engaged in the performance of his duties.

3. *Pleading; when overruling plea, error without injury.*—Where pleas are overruled by the court, and thus eliminated as a defense to the action, such ruling is reversible error, irrespective of their merits, if tested by demurrer, unless the record affirmatively shows that defendant actually had the benefit of the pleas on the trial, and in this event, such ruling would be error without injury.

4. *Same; charge to jury.*—A charge to the jury, that if they believe from the evidence that the injury to the plaintiff was the proximate result of the negligence of defendant, they must find for the plaintiff, is free from error.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. A. H. ALSTON.

The complaint contained four counts, but as to the first and third counts, the general affirmative charge was given for the defendant.

The second count was as follows: ."The plaintiff claims of defendant twenty-five hundred dollars, for that, and prior to the 5th day of December, 1902, the plaintiff was in the employment of the defendant, and as such employee was serving the defendant as a bridge laborer, and defendant was engaged in constructing the bridge across the Cahaba river in said county, and it was necessary for the plaintiff in doing his work for defendant to get upon a trestle, and to pass over the same, and there was a plank, or timber, which connected the two parts of the trestle, where the plaintiff was working, and the said plank, or timber, was placed loosely upon said trestle, and the plaintiff was passing over or along said plank, or timber, and the said plank toppled over, which caused the plaintiff to be thrown to the ground, breaking his arm and some of his ribs, and injuring his back and spine and permanently disabling him, by reason of said injuries the plaintiff has suffered great physical pain and mental torture and has been permanently disabled, and has been put to large expense in the way of medicine, medical attention and nursing; all to his damage twenty-five hundred dollars as aforesaid; hence this suit."

"And the plaintiff avers that his injuries were caused by reason of the negligence of said Robertson or Robinson (whose christian name is to plaintiff unknown) who had superintendence intrusted to him, and while in the exercise of such superintendence, the negligence of said superintendent consisting of this: That he knew, or by the exercise of reasonable care would have known that said plank or timber was not securely fastened or was not long enough to reach from one part of the trestle to the other and that it was necessary for the plaintiff to pass over said trestle and that plaintiff or other employees of defendant were liable to step upon said plank in the prosecution of his work, or in going to the place where he was to work, yet the said superintendent negligently failed

to have said timber properly fastened, and the plaintiff's injuries were caused by reason of said plank or timber not being securely fastened, all to plaintiff's damage as aforesaid."

The fourth count was as follows: "And for a fourth count of the complaint the plaintiff adopts the language of the first count as amended down to and including the words 'Hence this suit' (which is exactly like the second count as above set down to and including the words 'Hence this suit') and adds thereto the following: And the plaintiff avers that it was the duty of the defendant to provide a reasonably safe place for the plaintiff to work upon said trestle and a reasonably safe way for the plaintiff to pass and repass in going to and from his work, but plaintiff avers that the defendant negligently permitted a plank or timber connecting two parts of the trestle where plaintiff was working, to be loose and unstable, and the plaintiff fell and sustained his injuries by reason of said plank not being securely fastened and in consequence of said fall, he sustained injuries as hereinabove set out."

Demurrers were interposed to each of above counts raising the question that it does not appear from the averments of the counts that, at the time plaintiff received the injuries complained of, he was doing any work for, or in the employ of the defendant, or in the prosecution of, or in the performance of, any work for the defendant. The demurrers were overruled. The defendant then interposed the plea of the "General issue" and filed a number of special pleas setting up the defense of contributory negligence on the part of the plaintiff, and also pleas setting up that at the time of injury plaintiff was not engaged in any work for defendant, nor was he at that time under the control or direction of any agent of defendant. A demurrer to the last mentioned plea,—that it failed to deny that plaintiff was on defendant's premises on his way to work,—was sustained. A recital in the judgment entry shows that the other special pleas were overruled by the court.

The proof showed that the plaintiff was a boy about 18 years of age and that on and prior to the 5th of December, 1902, he was engaged as a laborer on and about

a certain bridge which the defendant was erecting over the Cahaba River, in Shelby county, Alabama; and there were other workmen engaged upon and about the bridge work; that, in going to and from work, it was necessary for the workmen to cross over said bridge; and this applied to the plaintiff as well as the other workmen. That, during the progress of the work upon the bridge, a portion of the flooring had been taken up, which left only the lateral stringers, one on each side of the bridge, for the passage of the workmen to and from their work; that the day before the plaintiff's injuries, a scantling six inches wide and two inches thick was by order of the superintendent laid alongside one of the stringers, one end resting against the cross beam, but apparently upon it; while there was other testimony that the scantling was not lying along the stringers; that on the morning of December 6, 1902, the plaintiff and one John Ward, another employee of defendant, were crossing the bridge, John Ward being on one side and the plaintiff on another, the latter being on the stringer along which the scantling was laid; that the plaintiff in proceeding along the stringer saw the scantling lying by the side thereof, and appearing to be resting upon the cross beam, and plaintiff stepped upon it and fell to the ground, a distance of 42 feet, the fall greatly mangling and injuring him, causing him great pain and suffering and permanently disabling him; that among other injuries was a hole in his back nearly as large as a man's fist, and this it was that probably caused the disease of his kidneys which rendered his life miserable and worthless. The proof further tended to show that it was reasonably safe for workmen to pass along said stringers in crossing the opening in the bridge, though the witness John Ward stated that in crossing he would hold to the side of the bridge on account of a swimming in his head; and there was further proof that, in addition to the stringers, there had been made a plank walk three feet wide by the defendant's superintendent for the workmen to walk upon and roll barrows along, but the testimony of the plaintiff tended to show that this was untrue. One of the defendant's witnesses testified (see page 32 of the record) that

the scantling was placed on the bridge by order of the defendant's superintendent in charge of the work, but that he cautioned all the workmen not to step upon it; but the plaintiff's witnesses, including the plaintiff himself, testified that they heard no such admonition from the superintendent. The defendant introduced testimony tending to show that, while the plaintiff was lying on the ground in almost mortal agony, the defendant's superintendent said to him; "I hope you do not blame the company for your injuries;" and the plaintiff replied, "No, it is all my fault;" but this was flatly denied by the plaintiff. The testimony for the plaintiff tended to show that his duties required him to be partly on the bridge and partly on the ground at the east end, in which direction he was going to his work at the time of his injury, but the testimony of defendant tended to show that plaintiff was not required to work on the bridge, but on the ground, breaking up rock to be used in filling one of the cylinders of the bridge. And the testimony for the defendant tended to show that the scantling was not lying along the side of the stringers, but rather across, one end resting against the cylinder; and one of defendant's witnesses testified that, when the plaintiff approached the opening, he began to run, and stepped upon the edge of the cylinder, and then four and a half feet across to the other edge, the cylinder being hollow, and then on the scantling; but this was categorically denied by John Ward, one of the witnesses for the plaintiff, and by the plaintiff himself.

At the request of the plaintiff, the court gave the charge copied in the opinion. The defendant, in writing, asked for the affirmative charge, and also for charges numbered 5 and 6, hereafter set out, all of which were refused by the court.

Charge 5: "The court charges the jury that if they believe from the evidence that the plaintiff was employed to perform work not on the bridge, but in picking and shoveling sand at another place, then there would be no duty on defendant to provide a way for the plaintiff to reach said place of work, and it would not be liable for damages for the accident to the plaintiff."

Charge 6. "The court charges the jury that if they be-

lieve from the evidence that the plaintiff was not employ-
ed to do work on the bridge, but was employed to shovel
sand below the bridge, and to pick rock, then there was
no duty on the part of defendant to provide a way over
said bridge, and it would not be liable for damages in this
action."

The court, at the written request of the defendant, gave
a number of charges which set forth in different forms the
principles of law, that, if the plaintiff's negligence con-
tributed proximately to his injury, he was not entitled to
recover.

The ruling of the court on the pleadings and in giving
and refusing charges is assigned as error.

BLACKWELL & AYRE, for appellant.—The demurrer to
the second count should have been sustained, because it
fails to aver that at the time of the injury the appellee
was performing any service for appellant. In order to
recover under the second subdivision of the Employer's
Liability Act, it is necessary to allege:

1. A personal injury to a servant while in the service
or business of the master.

2. That the injury was caused by reason of the negli-
gence of a superintendent.

3. That the superintendent must have been negligent
while in the exercise of his superintendency.—*M. & O. R.
R. Co. v. George,* 94 Ala. 219; *So. Ry. Co. v. Arnold,* 114
Ala. 183; *Ga. Pac. R. R. Co. v. Probst,* 85 Ala. 203.

As to the fourth count, we likewise submit that the de-
murrer is well taken, and that there is no sufficient alle-
gation that appellee was rendering any service for appel-
lant at the time of the injury.—*H. A. & B. R. R. Co. v.
Maddox,* 100 Ala. 618; *Hood v. Pioneer Co.,* 95 Ala. 462.

The court erred in refusing to give charges five and six,
asked by defendant.

The appellant owed no duty to the appellee to provide
a safe passage way for him in going to his work.—*Ga.
Pac. R. R. Co. v. Probst, supra.*

PINCKNEY SCOTT and A. O. LANE, *contra.*—The ruling
of the court, recited in the judgment entry overruling

defendant's pleas, was error without injury.—Dresser's Employer's Liability, p. 388; *Birmingham Ry. & Elect. Co. v. Allen,* 99 Ala. 374; *United States Fidelity & Guaranty Co. v. Habil,* 138 Ala. 348.

The master is bound to keep bridges, passageways, or ladders, which it is necessary for his employees to use in going to and returning from their labor, in a reasonably safe and convenient condition.—*Buzzell v. Lacania Mfg. Co.,* 77 Am. Dec. 212.

TYSON, J.—The complaint contained four counts. The first and third were eliminated by the giving of the affirmative charge as to each of them for defendant. This leaves for our consideration the second and fourth as amended, to which a demurrer was interposed and overruled.

The second count is based on the second section of the Employer's Liability Act (§ 1748 of the Code) and the fourth on a common law liability. In the second count it is alleged that defendant was engaged in the construction of a bridge across the Cahaba river and that plaintiff was in its employment as a bridge laborer; that it was necessary for plaintiff, in doing his work for defendant, to get upon a trestle and to pass over the same and that there was a plank or timber which connected the two parts of the trestle where plaintiff was working; that the said plank or timber was placed loosely upon said trestle and that plaintiff was passing over or along said plank or timber and that said plank toppled over, causing the plaintiff to be thrown to the ground, etc., etc. That his said injuries were caused by reason of the negligence of one Robertson, who had superintendence intrusted to him and, while in the exercise of such superintendence, he knew or by the exercise of reasonable care would have known that said plank, or timber was not securely fastened, or was not long enough to reach from one part of the trestle to the other, and it was necessary for plaintiff to pass over said trestle and that plaintiff was liable to step on said plank in the prosecution of his work, or in going to the place where he was to work, yet the said superintendent negligently failed to have said timber properly fastened, etc., etc.

39

[Virginia Bridge & Iron Co. v. Jordan.]

The fourth count is to the same effect as to plaintiff's being in the employment of defendant, and as to the manner in which he received his injuries, and differs only from the second count in the allegation of negligence. The negligence charged in the count is in this language: "And plaintiff avers that it was the duty of defendant to provide a reasonably safe place for plaintiff to work upon said trestle and a reasonably safe way for plaintiff to pass and repass in going to and from his work, but plaintiff avers that defendant negligently permitted a plank or timber connecting two parts of a trestle where plaintiff was working to be loose and unstable and plaintiff fell and sustained his injuries by reason of said plank not being securely fastened," etc.

The demurrer contains a number of grounds, but the only ones insisted on are those raising the question, that it does not appear from the averments of the counts that at the time plaintiff received the injuries complained of he was doing any work for, or was in the employ of defendant, or in the prosecution of, or in the performance of any service for defendant. Obviously these objections are aimed at those averments of the counts which show that plaintiff was injured, while passing over or along the trestle in going to the place where he had been assigned to work upon it by defendant. It appears from the averments that the trestle was a part of the premises of defendant and that plaintiff's employment required him to serve the defendant on these premises, and that in going to his place of work it was necessary to traverse this trestle. "If, in going to and from his work, the servant has to pass over premises which are owned and controlled by the master, he continues in the employment during that time."—Dresser's Employer's Liability, § 13 p. 76.

The principle was recognized by this Court in *Whatley v. Zenida Coal Co.* (122 Ala. 129), the action being by an administrator of an employe of defendant, where it was said: "He (the intestate) had to go to and from his work along the slope and defendant owed him immunity from hurt through such negligence as is counted on while seeking ingress and egress from his work in its mine." See

also *Olsen v. Andrews,* 168 Mass. 261; *Ewald v. Chicago & N. Ry. Co.,* 70 Wis. 420. On the averments, after plaintiff arrived upon the premises of defendant, he was subject to the orders and control of its superintendent having charge of the construction of the bridge and the employes engaged in work on it. He was, it is alleged, serving defendant as a bridge laborer—not in a special service. As a laborer he could have been ordered to do any and all work in and about the construction of the bridge that his superior had seen proper to have him do. When this is the case the relation of master and servant exists. —2 Bailey's Master & Servant, § 3139; Dresser's Employer's Liability, § 13 p. 75.

The case of *Ga. Pac. R. R. Co. v. Propst,* 85 Ala. 205, relied upon by appellant, clearly has no application here, as will be readily seen from a statement of the facts. In that case the plaintiff was employed by defendant as a night watchman at one of its stations called Patton Mines; that, by permission of defendant's superintendent, he was in the habit of going to Millport, where his father resided, about fifty miles distant to get his meals. That he voluntarily boarded the freight train at Patton Mines to go to Millport; when the train reached Berry Station, which is about ten miles from Patton Mines, the brakeman being sick, at the request of the conductor he undertook to couple some cars for the brakeman and was injured. This Court held that on these facts he was not in the employment of defendant as a brakeman, but was a mere volunteer and could not recover under the Employer's Liability Act.

The defendant, it appears by the record, filed a number of special pleas, setting up, according to its contention, the defense of contributory negligence on the part of plaintiff. A recital in the judgment entry shows that they were overruled by the court. If this ruling of the court had the effect of eliminating those pleas as a de-fense to the action, whether they were good or bad if tested by a demurrer, it was error for which the judgment must be reversed, unless defendant could have had the benefit of them under its plea of the general issue or actually had the benefit of them on the trial. If the record affirmatively shows that it had the benefit of them, then

the ruling, while erroneous, was innocuous. That it did have, clearly appears from the evidence and written charges given at its request.

The insistence that the affirmative charge and charges numbered 5 and 6 requested by defendant should have been given proceeds entirely upon the theory that plaintiff was not in the service of defendant at the time of his injury and, therefore, it owed him no duty to provide a safe passage across the bridge or trestle. This contention has been disposed of in what we said in treating of the demurrer to the complaint.

At request of plaintiff the court gave this charge, which was in writing :"While the injury alone is not sufficient to authorize a verdict for the plaintiff, yet, I charge you, gentlemen of the jury, that if you believe from the evidence that plaintiff was injured and that the negligence of the defendant as charged in the second or fourth count of the complaint was *the* proximate cause of the plaintiff's injuries then you must find a verdict in favor of the plaintiff." The criticism of this charge by appellant's counsel is that it ignored its defense of contributory negligence, which the testimony tended in some degree to establish. The charge submitted the question to the jury whether or not defendant's negligence was *the* proximate cause of plaintiff's injuries, and in order for the jury to find that it was, they must necessarily find that plaintiff was not guilty of contributory negligence, which proxi· mately contributed to his injury. For the defendant's negligence was not *the proximate* cause, if the negligence of plaintiff intervened so as to break the causal connection between defendant's negligence and the injury; nor if plaintiff's negligence concurrently and in combination with the negligence of defendant, in natural and continuous sequence, was the cause of the injury. The charge was technically accurate. If defendant apprehended that the jury might overlook its defense of contributory negligence, it should have asked a charge calling their attention to it.

On cross-examination of Ward, a witness for plaintiff, defendant propounded this question, "Arthur Jordan (plaintiff) could have crossed on the same place you

[Sample v. Guyer.]

crossed on, couldn't he?", to which an objection was sustained. If the purpose of the question was to elicit the fact that there was a way, other than the one that plaintiff took, then the ruling was without prejudice to defendant, since this was made obvious by the fact that the plaintiff was on one stringer of the bridge and the witness on the other. If its purpose was to show that the way witnessed travelled was the safer of the two, then the answer to the question would have involved the opinion of the witness and the objection was properly sustained.

The other exception reserved to the exclusion of testimony is not insisted on.

The case was clearly one for the jury and we are unwilling to affirm that the trial judge erred in refusing the motion for a new trial.

Affirmed.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.