ARTHUR INGRAM'S ADMRX. *v.* RUTLAND RAILROAD COMPANY.

Special Term at Brattleboro, February, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed October 11, 1915.

*Negligence—Railroads—Yard Accident—Injuries to Employee*
*of Another Railroad— Contributory Negligence—Forfeiture*
*of Status of Employee—Jury Question—Law of the Case.*

A locomotive fireman, in the employ of a railroad company having a
   trackage agreement whereby it used defendant's railroad yard for
   switching and making up trains, did not, as matter of law,
   temporarily lose his status as such employee and become a mere
   trespasser or licensee, by, without neglecting his duties, leaving
   his locomotive and going for a glass of milk across the tracks to
   a milk station in that part of the yard where as such employee he
   had a right to be, especially where the evidence tended to show
   that very likely he was about to begin working overtime, in which
   event he would need food, and so it was a jury question whether
   defendant owed him the duty of active care in the operation of its
   yard-locomotive, while he was returning across the tracks to his
   locomotive.

A decision on review that a locomotive fireman, who was killed by de-
   fendant's yard engine while he was returning across the tracks to
   his engine after a visit to a milk station to get a glass of milk, was
   not a trespasser in the yard, so far as relates to defendant's duty
   to exercise active care in the operation of its yard-locomotive, is
   the law of the case in a subsequent trial.

Where a servant is injured after he has left his working place and
   gone elsewhere on some errand of his own, and before his return,
   he generally cannot recover from his master, as such, for in such
   case the relation of master and servant is temporarily suspended
   and is not restored until the servant's return; but in the applica-
   tion of this rule the law allows the servant some measure of lati-
   tude, and whether a particular digression wrought such temporary
   suspension depends on the circumstances, and is usually a ques-
   tion of fact for the jury.

Where the defendant railway company, in switching an unlighted car at a speed of ten miles an hour in an unlighted yard, having no person on the car, and without giving any warning, ran down and killed one rightfully on the track, the question of its negligence was for the jury.

While in an action for negligence plaintiff has the burden, unaided by any presumption, of showing freedom from contributory negligence, that burden need not be discharged by direct evidence, for it is sufficient if the inference of due care can be reasonably inferred from the facts shown, and, though the instinct of self-preservation affords no presumption of that due care, it may give character and force to the established facts.

Where a locomotive fireman, in the employ of a railroad company having a trackage arrangement, whereby it used defendant's railroad yard for switching and making up trains, left his engine and went across the tracks to a milk station for a glass of milk, and hearing a signal from his engine started to run across the unlighted yard to it, and was struck by an unlighted car that defendant was switching at a speed of ten miles an hour, it is a fair inference that he saw the approaching car but judged its speed erroneously, owing to the darkness and to the facts that the car had no lights, and, as a mere error of judgment does not, as matter of law, show lack of due care, the question of his contributory negligence is for the jury. *Shumm* v. *Rutland R. Co.*, 81 Vt. 186, distinguished.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1914, Windham County, *Waterman*, J., presiding. At the close of all the evidence defendant moved for a directed verdict. Motion overruled, to which defendant excepted. Verdict and judgment for the plaintiff. The defendant excepted. This case has been once before in the Supreme Court, see 86 Vt. 550.

*E. W. Lawrence* for the defendant.

*Arthur Carpenter, Clarke C. Fitts* and *Hermon Eddy* for the plaintiff.

POWERS, J. Arthur Ingram, a fireman on a Boston & Maine switcher, was killed by a Rutland Railroad switcher in

the yard at Bellows Falls, on the evening of October 30, 1909. His administratrix brought this action to recover damages for the alleged negligence in the handling of the Rutland switcher, and the case came before us on the pleadings, as shown by *Ingram's Admrx.* v. *Rutland Railroad Co.*, 86 Vt. 550, 86 Atl. 813. The plaintiff has now obtained a verdict in her favor, and the defendant again brings the case here on exceptions. The questions presented arise under the defendant's motion for a directed verdict, and may be stated as follows:

1. Did the defendant owe Ingram the duty of active care?
2. Was the defendant negligent?
3. Did the plaintiff sustain the burden of showing that Ingram was in the exercise of due care?

All these questions, the defendant insists must, on the record now before us, be answered in the negative.

1. When the case was here before we held that Ingram was not a trespasser when killed. The defendant seeks to avoid this holding as to Ingram's standing by the fact now shown by the record that the rights of the Boston & Maine in the yard of the Rutland at Bellows Falls, were not general, as stated in the declaration, but limited, as shown by the proof. It now appears that the joint use of the Bellows Falls yard only extended to certain tracks and purposes, and it is urged that this shows that Ingram was, when killed, wholly outside his rights in the yard as a Boston & Maine employee, and was either a trespasser, or, at most, a mere licensee, to whom the Rutland owed no duty of active care.

We are unable to accept this view. The trouble with it is just this: It appears by this record that all that part of the yard in any way involved in this case was subject to the joint use of these companies, so far as the purposes for which the Boston & Maine switcher and crew were then in the yard were concerned. The Boston & Maine engine crossed over into this yard for a legitimate purpose, was all the time where it had a right to be, and as long as its crew were engaged in their duties there they were entitled to the protection which the law, under the arrangement, afforded them. The contrary is not claimed. So Ingram's standing at the time of the accident is to be determined by what he did after the Boston & Maine switcher came to a stop to allow the Rutland switcher to get out of the way.

It is earnestly argued by the defendant that when Ingram left his engine, a place of safety, and went across the tracks to the milk station for a glass of milk, he lost his standing as an employee of the Boston & Maine, and came to be, like the plaintiff in *Pierce* v. *Whitcomb*, 48 Vt. 127, 21 Am. Rep. 120, outside the protection which that relation afforded him—a trespasser or mere licensee. But as we have said, he did not depart from that part of the yard in which he had a right to be, and we held when the case was here before that he was not a trespasser when he was on his way back to his engine. *Ingram's Admrx.* v. *Rutland R. R. Co.*, 86 Vt., at p. 554, 86 Atl. 813. This holding is the law of the case, for the facts are not now materially different.

We are not disposed to depart from the doctrine of this holding. We are not unmindful of the general rule that puts a servant outside a recovery from his master, where he has, when injured, left his working place and gone elsewhere on some errand of his own. In such a case the relation of master and servant is temporarily suspended and is not restored until the servant's return. So, if Ingram's conduct amounts to such a departure from the business of his employer, there can be no recovery here; during his absence from his post the defendant would not owe him the duty of active care, and no actionable negligence would be shown by this record. It is not always necessary, however, to entitle a servant to recover against his master, that he should be at the moment of injury, actually at work in his proper place and in the business of the master. The law allows him some measure of latitude; and while there is a sharp conflict in the cases as to the limits of this latitude, and some apply the general rule above referred to with great strictness, there is much to commend in the inclination manifested by some courts toward a liberal regard for the just interests of the servant in such cases. *Southern Ry. Co.* v. *Bentley*, (Ala.) 56 So. 249. So the circumstances may be such that the master's duty will cover the servant's trip across the premises to and from his working place. *Janilus* v. *International Paper Co.*, (Me.) 92 Atl. 653; *Whatley* v. *Zenida Coal Co.*, 122 Ala. 129, 26 So. 124; *Virginia Bridge Co.* v. *Jordan*, 143 Ala. 610, 42 So. 73, 5 Ann. Cas. 709; and the circumstances may be such that a servant may step aside to get a drink of water, *Birmingham Rolling Mill Co.* v. *Rockhold*, 143 Ala. 115, 42 So. 96;

*Woodward Iron Co.* v. *Curl*, 153 Ala. 215, 44 So. 969; *Jarvis* v. *Hatch*, (Ind.) 65 N. E. 608; may go inside a building to get warm, *Parkinson Sugar Co.* v. *Riley*, 50 Kan. 401, 31 Pac. 1090, 34 Am. St. Rep. 123; may withdraw to answer a call of nature, *Houston & T. C. R. Co.* v. *Turner*, (Tex.) 91 S. W. 562; may stop to talk with a fellow workman, *Moore* v. *Pickering Lumber Co.*, (La.) 29 So. 990; may go to a convenient place to eat or wash, *Muller* v. *Oaks Mfg. Co.*, 113 App. Div. 689, 99 N. Y. S. 923; *Low* v. *Gen. Steam Fishing Co.*, (1909) A. C. (Eng.) 523; *Rhea* v. *Mo. Lac. Ry. Co.*, (Mo.) 156 S. W. 4; to get fresh air, *McCloherty* v. *Gale Mfg. Co.*, 19 Ont. App. 117; to hang up his coat, *Cordler* v. *Keffel*, (Cal.) 119 Pac. 658; or even to rest, *Jacobson* v. *Merrill, etc. Mill Co.*, 107 Minn. 74, 119 N. W. 510, 22 L. R. A. (N. S.) 309;—without forfeiting his rights as an employee. ' See note to *Charron* v. *Northwestern Fuel Co.*, (Wis.) Ann. Cas. 1913 C, 939. Such digressions and interruptions are to be expected, and when reasonably necessary, are held to be within the contemplation of the parties when the contract of employment is entered into, and covered thereby. The relation is not, in such cases interrupted, but continues. Whether this is so, however, depends upon the circumstances, and the question presented in a given case is usually one of fact. *N. W. Union Packet Co.* v. *McCue*, 17 Wall. 508, 21 L. ed. 705. The case before us is not, in this respect, exceptional. The transcript shows that Ingram's hours were uncertain. While it does not appear that there was extra work to be done the night of the accident, it does not appear that there was not. It does appear that he received as wages $1.96 for ten hours, and that he worked overtime almost every day, though he could not exceed sixteen hours in any one day; and that his overtime brought his average daily wage up to $2.65—which means an average of about three hours overtime per day. It was about six o'clock in the evening. If he was to work three hours longer, it was to be expected that he would require something to eat from some source about this time. It cannot be said as a matter of law that he ceased to be an employee, when, without neglecting his duties, he stepped into the restaurant at the station for a lunch or ran over to the milk station for a glass of milk. The jury could properly find on the evidence that Ingram was in the line of duty when the defendant ran over him; and if he was, the defendant owed him the duty of exercising the care of a prudent man to avoid

injuring him. *Sawyer* v. *R. & B. R. Co.*, 27 Vt. 370; *In re Merrill*, 54 Vt. 200; *Chicago & E. R. Co.* v. *Dinius*, (Ind.) 103 N. E. 652; *Turner* v. *B. & M. Railroad*, (Mass.) 33 N. E. 520.

2. The yard was unlighted except as the lights at the milk station, the switch lights and the lanterns of the men lighted it. The evidence was such that the jury was warranted in finding that none of these lights were of any aid to Ingram as he was hurrying back to his engine. Indeed, it might well be thought that they were worse than no lights at all, so far as he was concerned. The Rutland engine was pushing an unlighted milk car up one of the tracks Ingram had to cross to get to his engine. The Rutland engine had a headlight on each end of it, but this fact would be of small service to one in Ingram's position when called upon to judge the approach of the car; the engine was moving rapidly,—ten miles an hour—preparatory to kicking the car on out of the way; there was no man on the milk car to give warning; there was no light on it to show its exact location; the engine was working steam and making much noise. The conditions and operations were those usual in that yard, and it is altogether probable that they were familiar to Ingram. The rules of the two railroads required nothing more in the way of precautions. But it cannot, be said that no inference of negligence can reasonably be drawn from these facts. We cannot accept the view that the rules, or the practice of that yard, or both together, made the question of the defendant's negligence one for the court. If this method of handling cars was negligent, it was unjustifiable. *Boos* v. *Minneapolis, St. P. & S. S. M. Ry. Co.*, (Minn.) 149 N. W. 660; *Hamilton* v. *Chicago, etc. R. Co.*, 145 Ia. 431, 124 N. W. 363. Nor did the other circumstances shown make that result. We are aware that there are cases like *Hoffman* v. *C. & N. W. R. Co.*, (Neb.) 137 N. W. 878, and *Crowe* v. *N. Y. C. & H. R. R. Co.*, 70 Hun. 37, 23 N. Y. Supp. 1100, that hold, as we are asked to hold here, that the facts shown do not make a case of actionable negligence. We regard these cases as unsound and decline to follow them. Of the former it is to be said that the holding is by a bare majority, and of the latter Mr. Thompson says with some spirit, that "It would be difficult to state a proposition more careless of justice and absolutely brutal, than the proposition that a railroad company can shunt its cars along its tracks at night with no light upon them to apprise its yardmen of their approach, and with no

man upon them to give warning to those who may be on the track in front of them.'' 4 Thomp. Neg. §4528, n. The question of. the defendant's negligence was properly submitted to the jury.

3. Did the evidence warrant a finding that Ingram was in the exercise of due care? We agree with the defendant that we approach this question unaided by any presumption in his favor. *Shumm* v. *Rutland R. Co.*, 81 Vt. 186, 69 Atl. 945, 19 L. R. A. (N. S.) 973. On the other hand, in the circumstances shown, the fact that the car ran him down does not necessarily imply that he was not in the exercise of due care. *McGowan* v. *Wilmington, etc. Co.*, (Del.) 92 Atl. 1015; *Indiana Union Trac. Co.* v. *Cauldwell* (Ind.) 107 N. E. 705. While the burden was on the plaintiff, she was not required to establish Ingram's watchfulness by direct evidence. It will be sufficient if it can be said that an inference of due care can reasonably be drawn from the facts shown by the record. That he did not stop, and that it does not affirmatively appear that he looked and listened may not be controlling. The defendant says that the evidence shows that Ingram ran blindly toward his engine when the whistle called him, paying no attention to the well-known perils of the place and having no regard for his own safety. That this conclusion may fairly be drawn from the record cannot be denied. That it is the natural conclusion may be admitted. But this is not enough to prevent a recovery. In order to justify taking the case from the jury on this point, the evidence must be such as to exclude a reasonable hypothesis of due care on Ingram's part. This the record before us does not do. In the Shumm case and in *Wallace* v. *Fox*, 81 Vt. 136, 69 Atl. 665, the parties injured could have seen the approaching cars in time to have avoided the danger, if they had looked. This cannot be said of Ingram. The facts were not sufficiently decisive on that point. He went from the light into darkness, and was probably somewhat blinded by this fact; the lights and noise of the engine may have confused him; he was justified in moving rapidly. While as we have seen, the instinct of self-preservation affords no presumption of due care, it may give character and force to facts established by the proof. *Chase* v. *Maine Central R. Co.*, 77 Me. 62, 52 Am. Rep. 744. We think the jury was warranted in inferring from the evidence that Ingram, when he heard the signal calling him back to his engine, knowing all

about his surroundings and their dangers, knowing that the Rutland shifter had gone out with a milk car, started to run across the tracks, looked up the track and saw the Rutland shifter coming toward him; but owing to the darkness was not able to fix the exact location of the approaching car, nor accurately to judge of its gathering speed. In these circumstances, in attempting to cross the track ahead of the car, his error of judgment does not, as a matter of law, deprive him of the standing of a prudent man. To err in judgment does not necessarily imply a shortage of duty on the person mistaken. *Chicago & E. I. R. Co.* v. *O'Conner,* (Ill.) 9 N. E. 263; *Wagner* v. *Chicago & A. R. Co.,* (Ill.) 106 N. E. 809. It was a fair inference from the evidence that Ingram judged the situation reasonably, though not accurately, as it turned out; and if he did, the plaintiff is not necessarily to be denied a recovery. See *Wabash R. Co.* v. *McDaniels,* (Ind.) 107 N. E. 291.

*Judgment affirmed.*

## ON MOTION FOR RE-ARGUMENT.

POWERS, J. The defendant files a motion for re-argument based wholly upon the assumption that the foregoing opinion, in effect, overrules *Shumm* v. *Rutland R. R. Co.,* 81 Vt. 186, 69 Atl. 945, 19 L. R. A. (N. S.) 973. This assumption is unwarranted. The doctrine of the Shumm case is unimpaired by the result reached in this case. In negligence cases, the circumstances are always important factors. The requirements of the prudent-man-rule vary in the changed conditions which surround the person whose conduct is to be judged. Sometimes very slight circumstances change the question presented from one of law to one of fact. One does not have to go very far into the cases to discover this. The circumstances of the Shumm case are not the circumstances of this case. That a very deaf traveler on the highway, subject to the look-and-listen rule, who approached a well-known railroad crossing at a time of day when everything was plainly visible, and continued on to the very point of collision, almost,—so near, in fact, that one witness turned away to avoid seeing the accident,—with cap pulled down and going straight ahead, and was killed by a rapidly running engine, is held to have been guilty of contributory negligence,

does not compel a holding that a servant, suddenly summoned to duty, who runs across the tracks of his working place, in front of an approaching and unlighted car, and is run down, was likewise guilty. In the first case, if the victim of the accident had looked, he must have seen; and seeing, must have appreciated the situation in all its aspects affecting his safety. In the last, he may have looked and not seen; or seen so vaguely as to have afforded no basis for an adequate appreciation of the perils presented.

That the case in hand is a close one was fully understood when the opinion was prepared. It was carefully considered and thoroughly discussed. As the result announced does not affect the doctrine of the Shumm case, a re-argument urging that it does would serve no useful purpose.

*Rehearing denied.*