Hillsborough, }
Dec. 2, 1919. }

### DANIEL E. BARBER, *by his next friend*, MARY BARBER
### *v.* GEORGE R. JONES SHOE CO.

A servant, while waiting for work, temporarily left his machine and, while engaged in conversation with another servant in the same room and nearby, was injured by an unguarded machine at which such servant was employed: upon the evidence the finding was warranted that the injury was received in the course of employment within the meaning of Laws 1911, *c.* 163, *s.* 2.

The master's duty to guard such machine may be properly inferred from the known usage of employees when waiting for work to converse with other operatives at their machines; or, if a guard would have been ineffectual, the master may be at fault in not warning a youthful and inexperienced servant of the danger.

ACTION, for negligence under Laws 1911, *c.* 163, *s.* 2. The plaintiff was injured in the defendants' shoe factory upon a heel breast shaver.

Upon a view by the jury they saw a machine in full operation similar to the one upon which the plaintiff was injured, except it was equipped with guards. The defendants were subject to the employers' liability statute, Laws 1911, *c.* 163, and had not accepted its provisions. At the close of the plaintiff's evidence, the court

granted the defendants' motion for a nonsuit subject to the plaintiff's exception. Transferred from the January term, 1919, of the superior court by *Branch*, J. The evidence relevant to the exception appears in the opinion.

*James E. Banigan, Samuel J. Dearborn* and *Charles E. Hammond* (*Messrs. Banigan* and *Dearborn* orally), for the plaintiff.

*Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendants.

PLUMMER, J. The plaintiff, who was nineteen years of age, had been at work for the defendants in their shoe factory upon a nailing machine for about one week at the time of the accident. Just previous to the accident he had completed the work upon which he was engaged. He attempted to do some other work, but was ordered by the foreman not to do it. Having nothing to do, and while waiting for work, he went across the room about twenty feet, and talked with a young man who was operating a machine known as a heel breast shaver. The operative at this machine was working at a set of revolving knives on the left end of it, and there was also a set of revolving knives on the right end. These knives were unguarded, although there was a place on the machine for a guard, and no instructions had been given the plaintiff respecting the dangers incurred in being near it. The plaintiff's evidence tended to prove that while he was talking with this operative he was standing with his back to the right end of the machine, with his right arm hanging by his side, and his left arm resting on a shoe rack; that he had been thus engaged in conversation some three minutes when the sleeve of his jumper on his right arm was sucked into the revolving knives by the air blower attached to the machine, his right arm was drawn into the machine, and the back of his arm just above the elbow was cut; that it was, and had been for a long time customary for employees in that room, when they had nothing to do and were waiting for work, to go about the room, and talk with the operatives at the machines, as the plaintiff did; that he had never seen a heel breast shaving machine equipped with knives before entering the employment of the defendants, and that prior to the accident he had not observed the machine upon which he was injured; that the knives upon this machine were invisible when the machine was in operation, because they revolved with such velocity.

The first question for consideration is whether under the em-

ployers' liability and workmen's compensation statute (Laws 1911, c. 163), the plaintiff was in the course of his employment when the accident occurred. Section 1 of the act enumerates the kinds of employments covered by the law, and section 2 provides that "If, in the course of any of the employments above described, personal injury by accident arising out of and in the course of the employment is caused to any workman employed therein, in whole or in part, by failure of the employer to comply with any statute, or with any order made under authority of law, or by the negligence of the employer or any of his or its officers, agents or employees, or by reason of any defect or insufficiency due to his, its or their negligence in the condition of his or its plant, ways, works, machinery, cars, engines, equipment, or appliances, then such employer shall be liable to such workman for all damages occasioned to him." There is no question that the plaintiff was engaged in an employment covered by section 1 of the act. But the defendants contend that when he left his machine while waiting for work, and went across the room to talk with a fellow-workman he was not in the course of his employment, under a proper construction of section 2.

The employers' liability and workmen's compensation statute was enacted for the benefit and protection of the mill and factory operatives of the state. It is a remedial statute, and should be liberally construed to fully and adequately effectuate the purpose of its enactment. *Hotel Bond Co.'s Appeal*, 89 Conn. 143; *Coakley's Case*, 216 Mass. 71, 73; *Panasuk's Case*, 217 Mass. 589; *Donahue* v. *Sherman's Sons Co.*, 39 R. I. 373; *Zappala* v. *Industrial Ins. Comm.*, 82 Wash. 314; *Milwaukee* v. *Miller*, 154 Wis. 652; *Lizotte* v. *Company*, 78 N. H. 354, 357.

*Wheeler* v. *Contoocook Mills*, 77 N. H. 551, was an action for negligence under this statute. The plaintiff was employed by the day in an upstairs room of the defendants' hosiery mill. She had completed the work upon which she was engaged, and was told by the overseer that, if she desired to finish out the day, she could go down stairs, where there was piece work to be done. In doing so she fell on the stairs, and was injured. The defendants urged that because she had finished her day's work upstairs, and was going downstairs to engage in work of a different character, that she was not while in transit the defendants' servant. It was held that she was in the course of her employment. Although this case is somewhat unlike the case at bar, it demonstrates that a narrow and restricted construction is not being placed upon the statute in this state.

In *Boody* v. *Company*, 77 N. H. 208, the statute received a liberal interpretation. Such a construction of the statute would warrant a finding that the plaintiff was in the course of his employment when he was injured. It could be found that it was customary for the employees to go about and talk with their fellow-workmen, when waiting for work; that this custom was known to the plaintiff, and had existed for such a length of time that the defendants knew it, or ought to have known it; that it was the fault of the defendants and not of the plaintiff that he had no work; that while he was without work he simply did what he had seen others do, and what was customarily done, and did not do anything that he had been told not to do; that he was not enjoying a rest for a definite period, but his leisure was for an indefinite time, and might be terminated at any minute, and while it continued he was there in the room holding himself in readiness to return to work, and subject to the orders of the defendants. Some latitude must be allowed a workman while engaged in his employment. It cannot be said as a matter of law, if he is without work for a brief space of time and goes away from his work-place a few yards to speak to a fellow-workman employed in the same room, that he places himself beyond the protection of the statute. Such an interpretation of the law would be repugnant to the humane intent and purpose of the act. The following cases similar to the instant case hold that the employee was in the course of his employment when injured: *Von Ette's Case,* 223 Mass. 56; *Sundine's Case,* 218 Mass. 1; *Ingram's Adm'x* v. *Railroad,* 89 Vt. 278; *Bryant* v. *Fissell,* 84 N. J. Law 72; *Terlecki* v. *Strauss,* 85 N. J. Law 454; *Scott* v. *Payne Bros.,* 85 N. J. Law 446; *Richards* v. *Company,* 92 Conn. 274; *Racine Rubber Co.* v. *Industrial Comm.,* 165 Wis. 600; *Dzikowska* v. *Company,* 259 Pa. St. 578; *Holland-St. Louis Sugar Co.* v. *Shraluka* (Ind.), 116 N. E. Rep. 330. In *Dzikowska* v. *Company, supra,* the employee was engaged in a shipping room loading steel upon a freight car. They had loaded all the steel at hand, and were waiting for more. He stepped out of the shipping room and went into a box car supposedly in order to smoke; in striking a match upon his trousers, his oily burlap apron caught fire, and he was fatally burned. The court in this case stated: "The fact that, in the present case, Dzikowska met with an accident during a short interval of waiting for the arrival of more material to load, made no difference. His period of employment was not broken thereby. He was discharging precisely the duty laid upon him by his employer, and in the manner expected of him. As the court below said, 'this

was not a rest period. It was not a period when, by the rules of the employment, the employee was free from the duties of his employment. It was an indeterminate period of waiting for the occurrence of an event which would renew the active operations of the employment. That might be a minute, or it might be very much more. But the employee had not been called off from work, and, in renewing his work, would not be called back. He was there ready to work as soon as the material was ready for his hand.'"

The defendants claim that no duty was imposed upon them to guard the machine upon which the accident occurred to protect the plaintiff from injury. As it can be found that it was a custom in that room, which was known, or ought to have been known to the defendants, for employees when waiting for work to go about the room, and talk with the operatives at the machines, it can also be found that it was the duty of the defendants to reasonably guard this machine to protect the employees from injury while they were there engaged in the course of their employment. *Edwards* v. *Tilton Mills*, 70 N. H. 574; *Morrison* v. *Company*, 70 N. H. 406.

*Mitchell* v. *Railroad*, 68 N. H. 96, is a leading authority in support of the proposition that duties are imposed upon persons by custom and usage. In that case a custom which the evidence tended to prove was known to the defendants, was of vital importance in sustaining the verdict of the plaintiff. See also *Minot* v. *Railroad*, 73 N. H. 317; *Hobbs* v. *Company*, 74 N. H. 116; *Duggan* v. *Railroad*, 74 N. H. 250. The defendants say that, if the machine had been properly equipped with a guard, it could not be found that it would have protected the plaintiff from injury. While it does not conclusively appear that this is true, yet conceding that it is, it does not aid the defendants. If the machine was of such construction that it could not be guarded so as to reasonably protect the plaintiff from injury, then it was an issue of fact whether it was the duty of the defendants to instruct him relative to the danger which he would incur when in proximity to the machine in operation. It cannot be held as a matter of law that the defendants were under no obligation to instruct the plaintiff, or guard the machine upon which he was injured. In view of the youth and inexperience of the plaintiff, the character of the machine, and the custom which it can be found prevailed among the workmen to go about the machines, these were issues of fact, and a finding upon them favorable to the plaintiff would establish the negligence of the defendants.

It is further contended by the defendants that it was impossible for the accident to have occurred as the plaintiff testified it did. This is a question for the jury unless upon the evidence the defendants' contention is conclusively proved, a position which is not sustained by the evidence as reported. Consequently that issue must be submitted to the jury.

*Exception sustained.*

All concurred.